In the Matter of the Estate of LEON W. CARROLL, Deceased.

Surrogate's Court, Broome County, March 6, 1952.

*Robert M. Schwab* for Vina Carroll, petitioner.

*Edward F. Ronan* and *Harold S. Taylor* for Mae C. O'Day, as executrix of Leon W. Carroll, deceased, respondent.

PAGE, S. The sole question presented is as to whether the petitioner, Vina Carroll, as widow of the deceased, is entitled to a setoff of personal property within the category of subdivision 3 of section 200 of the Surrogate's Court Act, of which said deceased died possessed.

Leon W. Carroll, who is now the deceased herein, first married the petitioner in the year 1921. In 1934, petitioner obtained a divorce. On the 18th day of April, 1936, the parties were remarried in the State of Pennsylvania. After their second marriage, they took up their residence on a farm in the town of Kirkwood, Broome County, New York, owned by them as tenants by the entirety. The second cohabitation lasted about seven years until on or about July 6, 1943, when the husband removed from the premises. Taking up his abode first with his sister and later with another lady, he never returned to the petitioner, she, meanwhile, continuing to live on the farm until the date of the death of Leon W. Carroll on June 20, 1950.

When her husband left the petitioner in July, 1943, he took with him the then existing farm stock and other personal prop-

erty of the category of subdivision 3 of section 200 of the Surrogate's Court Act. Of course, between then and his death in 1950, calves became cows, and otherwise as it appears these chattels did not remain identically the same. The personal property here in question consisted of his cattle and other farm animals and farm machinery and equipment as they were on June 20, 1950. By agreement between the petitioner and the executrix, this personal property was sold and the proceeds, to the extent of $1,000, are being held in escrow pending the determination of the present proceeding.

The executrix has refused to set off as widow's exemptions the property in question, assigning reasons therefor as follows: (1) that the alleged second marriage of said Leon W. Carroll and petitioner was not a valid marriage; (2) that petitioner, by an agreement in writing, had released all her right, title and interest in the estate of the deceased, including the personal property in question; (3) that the petitioner forfeited her right to claim exemptions as the widow of the deceased by reason of her abandonment of him, and (4) that the personal property in question was acquired by Leon W. Carroll subsequently to the separation of the parties.

Each of these defenses to the petitioner's assertion of her alleged rights under section 200 of the Surrogate's Court Act will be considered in the order above stated.

As to the alleged invalidity of the second marriage, the executrix introduced in evidence the record of an application by the parties for a marriage license purporting to have been issued by the Clerk of the Orphans' Court of Susquehanna County, Pennsylvania, on April 13, 1936. Under the signature of the clerk of this court, there are some lines apparently designed for indicating his official title and the date of expiration of his commission. These lines were left blank. The executrix contends that, under applicable laws of the State of Pennsylvania, the facts required to be stated in an application must have been sworn to before an officer duly authorized to administer such oath, failing which, the purported marriage license would be and, in this case is, null and void, and, likewise, the marriage ceremony itself, which was performed by a Justice of the Peace in Pennsylvania.

It appears that, in Pennsylvania, clerks of orphans' courts, during the time in question, were authorized to issue marriage licenses. (See Purdon's Pennsylvania Statutes Annotated, tit. 48, § 1.) Also, in his official capacity as the clerk of said

court, he had power to administer verifications and oaths, and it was his duty to do so in connection with all the official business of his office. (See Purdon's Pennsylvania Statutes Annotated, tit. 17, § 1482, and tit. 16, § 226.)

Marriages and their incidents are of such importance to society, as well as to the parties directly involved, that the law does not permit them to be invalidated by reason of some such technicality as may occur in connection with the requirement that a license be obtained. Provisions requiring the obtainment of licenses are regarded as directory only. Requirements as to licenses and other regulatory provisions are sanctioned by penal liability of municipal or court clerks, clergymen and magistrates. (See *Matter of Levy,* 168 Misc. 864, and cases there cited.) In this instance, the status of the alleged widow was upheld although not even a pretense as to a license had been observed in connection with her marriage to the decedent. At the most, the present defect was nothing more than a clerical error or oversight. It does not affect the validity of the marriage.

As to the alleged release by the petitioner of all rights which she might otherwise have upon becoming the widow of the deceased, there was introduced in evidence a separation agreement executed November 29, 1932. This was during the period of the first marriage. It purported to settle an agreement between the parties upon certain considerations moving from the husband to the wife for her consent to release him from any and all " temporary or permanent alimony, counsel fees, costs, disbursements, support and maintenance." The purpose and effect of this instrument was to settle the then existing situation between the parties. This agreement contains no express provision in relation to rights of either in the estate of the other, or otherwise upon the death of the other.

It is unnecessary to examine the separation agreement any more minutely than we have, for, regardless of any other consideration, it, of course, was abrogated by the second marriage. The second marriage was a new deal. It obliterated the previous one. It, in effect, was a novation. Upon the celebration of the second marriage, the rights and duties of the parties in relation to each other became the same as if there had never been any precedent marriage.

The next point is as to the question of abandonment. The executrix does not contend that the petitioner abandoned her husband in the sense of " pulling out on him ". Rather, this was the other way around. But it is claimed that petitioner was of

a nagging disposition and, also, that she actually had inflicted bodily injury upon her husband and threatened more of the same to an extent such that he had good cause to fear for his life and limb if he continued to live with her. There is some intimation in the evidence that he had one or more scars on his body allegedly resulting from a knifing assault by his wife. Contravening this, there was testimony by an ex-daughter-in-law of the petitioner, who had, for about two months, lived with her while she was cohabiting with Leon W. Carroll, that the inharmonious relations between the parties resulted from his settled habit of frequent intoxication and being abusive to his wife while in this condition.

However, the evidence is inconclusive either way. If the testimony as to the knifing attack by the petitioner were more credible and convincing, the situation might be somewhat different. The witnesses were unable to state anything more than that he had the scars and that, in some way or other, their understanding had been that the wounds resulting in them had been inflicted by the petitioner. The evidence as to this is insufficient as proof that she did so. In any event, neither cruelty nor conduct rendering cohabitation unsafe, as a ground for separation, (see Civ. Prac. Act, § 1161) is included among the bases for the operation of section 87 of the Decedent Estate Law. (For a suggestion of seemingly desirable further legislative attention to this section, see *Matter of Andrews,* 194 Misc. 217, 220, 221.)

Section 87 of the Decedent Estate Law, *inter alia,* deals with the effect of abandonment upon the " rights * * * of former husband or wife to distributive share ". This section provides that no distributive share in the estate of a decedent shall be allowed, " (d) or to a wife who has abandoned her husband ".

Of course, the present issue is not as to the status of the petitioner as a distributee of the deceased. Since 1930, distributees (in lieu of formerly heirs-at-law and/or next of kin) are those who take or share in net assets comprising a decedent's estate, consisting of either personal or real property, or both, or the proceeds thereof. Species of personal property designated under any of the subdivisions of section 200 of the Surrogate's Court Act are not estate assets. They are specifically exempted from becoming such.

But, by chapter 659 of the Laws of 1936, the situation as to personal property under any and all of the subdivisions of

section 200 of the Surrogate's Court Act was clarified. The provisions of this chapter were consolidated as the final paragraph of section 200 of the Surrogate's Court Act providing: "No property or money shall be set apart under this section to a surviving spouse who cannot inherit as a distributee, any part of the estate of a deceased spouse who died intestate; nor to a surviving spouse who can neither inherit, nor claim any rights against the estate of a deceased spouse who has died testate."

By reading this amendment in conjunction with section 87 of the Decedent Estate Law, it seems apparent that, although itself silent on the particular subject, the latter section becomes applicable as if it had been amended so as to provide that, under any of the conditions stated, in addition to barring claims of a surviving spouse under any of the provisions of the Decedent Estate Law, the provisions of this section had also been extended to claims under section 200 of the Surrogate's Court Act.

The enactment of section 87 of the Decedent Estate Law indicates in no uncertain terms that the Legislature aimed to provide that a divorced ex-spouse, or one who had, in the lifetime of the other, abandoned him or her should not be recognized in any way as a surviving spouse who had not done so. In enacting it, the Legislature appears to have forgotten about section 200 of the Surrogate's Court Act.

There are numerous reported cases as to section 87 of the Decedent Estate Law in relation to its application in conjunction with sections 83 and 18 of the Decedent Estate Law, but there appears to be no reported precedent as to the applicability of its provisions in a case where the issue is in relation to alleged rights of a surviving spouse pursuant to the provisions of section 200 of the Surrogate's Court Act. However, as it appears, by according proper effect to the above-quoted portion of present section 200 of the Surrogate's Court Act, there is no material difference. Since the above-quoted amendment of section 200 of the Surrogate's Court Act, although section 87 of the Decedent Estate Law does not expressly say so, when a surviving spouse claims statutory exemptions, the same disposition is required as would be if such claim were made under any provision of the Decedent Estate Law.

In cases arising under section 87 of the Decedent Estate Law, where a surviving spouse has been confronted with the contention that his or her rights as such are forfeit because of abandonment, the issue has been considered and determined upon

evidence of the facts and circumstances shown to have existed during the joint lifetimes of the parties as to whether or not as of then there *had been,* on the part of the deceased spouse, a cause of action for separation on the ground of abandonment or, in the case of a surviving husband, he had been guilty of nonsupport.

It thus appears that there has been judicially developed an anomalous *nunc pro tunc* manner of regarding these situations, a sort of a " roll-back " to previously existing conditions, comprehending the posthumous trial of an issue as to whether the presently deceased spouse would have succeeded in an action for separation on the ground of abandonment against the surviving spouse had such action been instituted at a more appropriate time.

If, in the present case, pursuant to section 1161 of the Civil Practice Act, an action for separation on the ground of abandonment had been instituted by petitioner's husband at or about the time he left her, the evidence does not constitute a sufficient basis for a determination that he would have been successful. Because of the previously observed insufficiency of the evidence to prove conduct on the petitioner's part endangering her husband, we are not concerned in the present proceeding with the question of whether such conduct might or could be regarded and treated as tantamount to or the equivalent of abandonment as that term is employed in section 87 of the Decedent Estate Law. The conclusion follows that, if we may take the liberty of reversing the expression, a " *tunc pro nunc* " theory of abandonment in favor of the husband is untenable. Therefore, insofar as this issue is concerned, it must be determined in favor of the petitioner.

As previously stated, the last point among the contentions of the executrix is that all the property in question had been acquired by the decedent after his cohabitation with the petitioner had finally ceased. There is no provision or qualification contained in section 200 of the Surrogate's Court Act, in any way, to the effect that chattels exempted to a surviving spouse under the provisions of this section must have been acquired during actual cohabitation. The provisions of the section are to the effect that there is one and only one issue, and that is as to status. As to a widow, that is whether, without her ever having been chargeable with an unreconciled abandonment of her husband, she was and remained his legal spouse up to the moment of his death. The section requires nothing more.

In this case, under its unique facts, it has been strongly and somewhat convincingly contended by counsel for the respondent-executrix that the determination of the issue in favor of the petitioner would be inequitable and unjust. But a contrary conclusion could not be brought in accord with the applicable law. An amendment of the law designed to preclude a surviving spouse, under such facts as exist herein, would be a matter for the consideration of the Legislature, not for a Surrogate's Court.

Having determined that petitioner was the spouse of the decedent at the date of his death and thereupon became his surviving spouse automatically has the effect of settling the issue in relation to rights accorded to her under the provisions of section 200 of the Surrogate's Court Act, and the executrix must be and is hereby directed to proceed accordingly.