# Doris A. Lee, Respondent, v Alfred T. Lee, Appellant.

Second Department, April 18, 1983

222

APPEARANCES OF COUNSEL

*Leonard C. Zamore* (*J. Irwin Shapiro* of counsel), for appellant.

*Weinstein & DeZorett* (*George Weinstein* of counsel), for respondent.

OPINION OF THE COURT

*Per Curiam.*

Doris and Alfred Lee were married in 1948 and divorced 20 years later. In 1968, the year of the divorce, Mrs. Lee married John Jirinic, but that marriage ended in divorce in 1971. She remarried Alfred Lee in December, 1972 and commenced the current action for divorce against him in April of 1981. Support of children is not at issue because the second Lee marriage produced no offspring and the three children of the first are emancipated. Mr. Lee is a shareholder member of a New York City law firm which has obtained corporate status.

During the pendency of the action, Mrs. Lee served a notice of deposition requesting that, to the extent they were in the defendant's "possession, custody or control", he produce 23 classes of items set forth in an accompanying schedule. The documents sought, which covered the period 1963 to the time of the notice, included item 15 which required production of all agreements between the law firm and the defendant; all loan, personal expense and receipt voucher statements; all financial bankbooks and

certificates; and all canceled checks, bank statements and deposit slips. The defendant responded by moving for a protective order, seeking to limit disclosure to the period of the second marriage and to strike certain items from among those requested. Special Term (McGINITY, J.) granted the motion to the extent of limiting disclosure to documents dating from December, 1972 (the month of the remarriage) and by striking item 15, except for any agreement between the law firm and the defendant. Plaintiff was granted leave to renew her request with specificity at the defendant's deposition.

Thereafter, the defendant served answers to plaintiff's interrogatories, stating that he has a one-eighteenth interest in the law firm and that the firm had fixed the value of each share at $25,000 as of April, 1981. During the course of a deposition conducted at the courthouse, an impasse was reached concerning the scope of disclosure, and the parties proceeded to the chambers of Justice LEVITT for rulings. One of the resulting rulings permitted plaintiff to inquire into the financial affairs of the defendant during the first marriage, a period dating back to 1948. The court left it to the Trial Judge to determine whether the information deriving from the earlier marriage would actually be admissible at trial. The court also appointed a referee to supervise disclosure with the referee to be paid by the defendant, directed defendant to produce at the deposition all copies of his law firm's financial statements which were previously furnished to him by the firm, and ruled that the plaintiff could inquire on the deposition of the defendant as to any increase or decrease of his assets up to the date of the deposition. The appeal is from the order entered upon Justice LEVITT's rulings.

■■ Although the rulings have been attacked by the defendant as overruling a Justice of co-ordinate jurisdiction, an appellate court is not bound by law of the case, and the appeal will be decided on its merits. A primary issue presented is whether a court may consider the financial circumstances of a prior marriage between the parties in distributing marital property or in awarding maintenance. In defining marital property as "all property acquired by either or both spouses during the marriage" (Domestic

Relations Law, § 236, part B, subd 1, par c), the statute unmistakably refers to the marriage which is the subject of the divorce. The factors to be considered in the equitable disposition of property and in the award of maintenance include "the income and property of each party at the time of marriage, and at the time of the commencement of the action" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [1]; subd 6, par a, cl [1]) and "the duration of the marriage" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [2]; subd 6, par a, cl [2]). That being so, property acquired by the parties during an earlier marriage is "separate" property as defined in section 236 (part B, subd 1, par d) of the Domestic Relations Law. The plaintiff, nevertheless, suggests that the circumstances of the first marriage may be considered under the so-called "catch-all" provisions of subdivisions 5 (par d, cl [10]) and 6 (par a, cl [10]) of part B of section 236 of the Domestic Relations Law, which permit consideration of "any other factor which the court shall expressly find to be just and proper" (see, generally, 2 Foster and Freed, Law and the Family, pp 868-870, 1983 Cum Supp; Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, C236B:13, C236B:14, pp 135-137, 1982-1983 Pocket Part). We disagree.

■ The rights and obligations of the parties deriving from the first marriage were fixed in the 1968 divorce decree, and except for continuing child support obligations (assuming the children were not yet emancipated), even those rights and obligations were terminated when the wife remarried (see *Gaines v Jacobsen,* 308 NY 218; *Denberg v Frischman,* 24 AD2d 100; *Matter of Carroll,* 202 Misc 508). For equitable distribution purposes, the second marriage is unrelated to the first, with the rights and duties of the parties to be determined as if there never had been an earlier marriage between them. While the parameters of the "catch-all" provisions have not as yet been defined judicially, the current debate as to their scope seems to be limited to the role of marital fault (see 2 Foster and Freed, Law and the Family, pp 869-870, 1983 Cum Supp; Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law,

C236B:13, C236B:14, pp 135-137). Although we assay no all-embracing definition of the catch-all provisions, we do conclude that their application requires some nexus to the current marriage. We do not believe the catch-alls can be utilized to revive rights or obligations deriving from a marriage which is not the subject of the action in which equitable distribution is sought. Thus there is no legal basis for tacking the period of the first marriage to the second one in determining the current issues arising under the Equitable Distribution Law.

Our conclusion concerning tacking does not, however, deprive a spouse litigating a second marriage to a person from whom he or she was previously divorced from inquiring with reference to financial matters that occurred prior to the second marriage. Nevertheless, because no rights derive from the dissolved marriage, such a previously married litigant has no greater right to discovery than any other marital litigant. Like any other party in an equitable distribution case, a twice married litigant may seek discovery of hidden assets (see *Roussos v Roussos,* 106 Misc 2d 583), the financial history of a business (see *Muller v Muller;* 116 Misc 2d 660), or to probe the distinctions between marital and separate property, even though such inquiry may deal with financial matters that preceded the marriage in issue. It is possible, then, that a twice married litigant will touch upon financial events that occurred during an earlier marriage to the same party, and we do not imply that that is impermissible. Here, however, plaintiff seeks discovery of matters that occurred 15 to 35 years ago and relies for such discovery solely on rights assertedly derived from the first marriage without any other showing of the relevance of the circumstances of that early period. In view of the remoteness of the time involved, we see no need to permit discovery of the defendant's financial circumstances during the period of the first marriage, even though we recognize that the pretrial right to discovery encompasses matters beyond what may be admissible at trial (*Johnson v New York City Health & Hosps. Corp.,* 49 AD2d 234). Accordingly, the portion of the order which permitted such disclosure should be vacated.

■ There are other issues. The parties not only disagree over the commencement period for disclosure, but also argue over its termination point, with the plaintiff contending that she can inquire concerning the value of defendant's assets right up to the time of deposition, while he contends that the cutoff point is the commencement of this action. While it is true that the commencement of the action marks the termination of the time within which marital property can be acquired (see Domestic Relations Law, § 236, part B, subd 1, par c), the wife is not bound by her husband's estimate of the worth of his assets on that date. An exchange of marital assets for other assets is relevant to the valuation of the exchanged marital assets, and arm's length transactions after commencement of the action may help to establish the true worth of these assets (see *Aron v Aron,* NYLJ, Sept. 3, 1982, p 7, col 1). Postcommencement information relevant to the valuation of marital assets is thus a proper inquiry.

■ The defendant also challenges the portion of the order that requires him to produce at the deposition all copies of his law firm's financial statements which were previously furnished to him by the firm. His argument is twofold: (1) the value of his share in the professional corporation was fixed by stockholder agreement, thereby precluding any further examination of the firm's finances, and (2) an inquiry should first be made at the deposition so that the document request can be specified to a greater degree. In determining the defendant's interest in the professional corporation, the buy-sell agreement is not binding on the plaintiff, who may challenge the figure set as not reflecting true value (see *Muller v Muller,* 116 Misc 2d 660, *supra; Stolowitz v Stolowitz,* 106 Misc 2d 853; *Stern v Stern,* 66 NJ 340; *Matter of Slater,* 100 Cal App 3d 241; *Rogers v Rogers,* 296 NW2d 849 [Minn]; Ann., 74 ALR3d 621). Furthermore, while a notice for discovery and inspection pursuant to CPLR 3120 must specify documents with reasonable particularity (*Ganin v Janow,* 86 AD2d 857), a notice to produce materials at a deposition pursuant to CPLR 3111 need not provide the same specificity (*Weiss v Rae,* 87 AD2d 629). In our view, the direction to produce documents previously furnished to the defendant by his law firm

struck a proper balance between a wholesale rummaging of the firm's records which would require notice to the firm (see *Stackel v Schneier,* 88 AD2d 594) and an otherwise unsatisfactory disclosure, contrary to the mandate of section 236 (part B, subd 4) of the Domestic Relations Law (see *Kaywood v Kaywood,* 75 AD2d 805; *Roussos v Roussos,* 106 Misc 2d 583, *supra*). If the production of the documents is deferred to await greater specificity at the time of the deposition, further unnecessary delay in disclosure will result.

■ With respect to the appointment of a referee to directly supervise disclosure (CPLR 3104, subd [a]), we are not persuaded that Special Term abused its discretion in light of the parties' demonstrated need for constant rulings and the substantial litigation generated by previous disclosure disputes (see *Kamp v Schier,* 75 AD2d 638; *Baker v General Mills Fun Group,* 101 Misc 2d 193). Furthermore, considering the disparity in assets and income between the parties, the court properly charged the defendant with payment of the referee's expenses (see CPLR 3104, subd [e]).

Accordingly, there should be a modification of the order under review by deleting the second and third decretal paragraphs and by adding a provision prohibiting inquiry into the defendant's financial affairs during the parties' first marriage. As so modified, the order should be affirmed insofar as appealed from.

LAZER, J. P., O'CONNOR, BROWN and RUBIN, JJ., concur.

Order of the Supreme Court, Nassau County, dated July 16, 1982, modified, by deleting the second and third decretal paragraphs thereof and substituting therefor a provision prohibiting inquiry into the defendant's financial affairs during the parties' first marriage. As so modified, order affirmed insofar as appealed from, without costs or disbursements.