ELAYNE KAYE, Appellant, v ROBERT KAYE, Respondent.

Second Department, July 16, 1984

**APPEARANCES OF COUNSEL**

*Colton, Weissberg, Hartnick, Yamin & Sheresky* (*Marian F. Dobbs* of counsel), for appellant.

*Stanford G. Lotwin, P. C.* (*Norman S. Heller* of counsel), for respondent.

**OPINION OF THE COURT**

BROWN, J.

At issue on this appeal is the extent to which the financial affairs of closely held corporations are to be disclosed in evaluating and distributing the shares of such corporations as marital property under the Equitable Distribution Law (Domestic Relations Law, § 236, part B).

The plaintiff wife commenced this divorce action in 1982 after 17 years of marriage, claiming abandonment and adultery. In addition to dissolution of the marriage, she sought maintenance and support for herself and her two children and equitable distribution of the marital property, virtually all of which is held in her husband's name. Among other assets of the parties, and of particular relevance on this appeal, is the defendant husband's minority interest in three of four closely held family corporations which are involved in the sale of women's uniforms. The husband is a 40% shareholder in two of the corporations and holds 12% of the shares in the third. The balance of the stock in the corporations is held by defendant's brother and father. Defendant's father, however, is the sole shareholder in the fourth corporation. According to plaintiff, the interrelated businesses of these corporations showed combined net sales for 1981 in excess of $32,000,000. In his financial affidavit, defendant valued his holdings in the three corporations at approximately $1,035,000 and listed his total net worth at approximately $1,500,000.

Plaintiff initiated disclosure by serving interrogatories upon defendant seeking both personal financial informa-

tion and financial information with respect to the four closely held corporations. In particular, she sought the following information in paragraphs (e), (f), (h) and (i) of interrogatories numbered 1 through 4 with regard to each of the four closely held corporations:

"(e) list the names, addresses and account numbers of any banks in which the corporation has or had savings or checking accounts during the period of the marriage;

"(f) are there any agreements between yourself and the corporation or any other shareholder(s)? If so, describe all oral agreements and annex copies of all written agreements * * *

"(h) Annex copies of the corporate income tax returns for the years during which you acquired your interests in the corporation and for the years 1963 and 1964;

"(i) Annex copies of the corporate net worth statement and balance sheets for the years during which you acquired your interest in the corporation and for the years 1963 and 1964".

In response, defendant made the instant application for a protective order as to certain of the interrogatories including the interrogatories quoted above, arguing, *inter alia,* that they were unduly burdensome and, further, that those interrogatories seeking discovery with respect to the records of the four closely held corporations — other than to the extent they sought disclosure of payments actually made to him — were improper since he was only a minority shareholder in three of the corporations and had no interest at all in the fourth.

Special Term granted substantially all of the relief which defendant requested, including vacating paragraphs (e), (f), (h) and (i) of interrogatories numbered 1 through 4, as well as certain interrogatories requesting discovery regarding defendant's personal finances. Citing this court's decision in *Rubin v Rubin* (87 AD2d 587), Special Term reasoned with regard to the requests for corporate disclosure that since defendant was only a minority shareholder, an extensive audit of corporate finances was not warranted and disclosure should be limited to payments actually made to defendant. The court also limited the period of

permitted disclosure to the three years immediately preceding the commencement of the divorce action and, in order to expedite discovery, *sua sponte* directed the parties to proceed directly to depositions upon oral examination and circumscribed the records to be produced at those depositions.

■■■ Plaintiff now appeals from so much of Special Term's order as "granted defendant's motion for a protective order, as limited discovery to a three-year period, and as directed an examination before trial under certain terms". We modify by reinstating all of the interrogatories concerning the three corporations in which defendant is a shareholder, by authorizing limited disclosure concerning the fourth corporation in which defendant has no ownership interest, and by striking those provisions which limit the period of disclosure to the three years immediately preceding the commencement of the action, and direct the parties to proceed to an examination before trial.

With the enactment of the Equitable Distribution Law (Domestic Relations Law, § 236, part B), profound changes were engendered in the standards which govern the disposition of property upon the dissolution of a marriage (see, generally, *Conner v Conner,* 97 AD2d 88). Under equitable distribution, upon the dissolution of the marriage, accumulated marital property must be distributed without regard to title (Domestic Relations Law, § 236, part B, subd 1, par c), based upon a consideration of 10 specifically enumerated factors (Domestic Relations Law, § 236, part B, subd 5, par d). The statute also provides that where the court determines that distribution of an asset, such as an interest in a corporation, would be appropriate, but impractical, burdensome or contrary to law, it may make a distributive award in lieu of directly transferring or liquidating such an asset (Domestic Relations Law, § 236, part B, subd 5, par e). Further, the statute mandates that, in making a distribution of marital assets or providing for a distributive award, the court must set forth the factors considered, and the reasons for its decision (Domestic Relations Law, § 236, part B, subd 5, par g).

To fulfill its mandate to equitably distribute the marital assets and to be able to properly set forth both the factors

considered and the reasons for its decision, the court must be provided with the relevant financial information necessary to fix the value of those assets. Broad pretrial disclosure which enables both spouses to obtain necessary information regarding the value and nature of the marital assets is critical if the trial court is to properly distribute the marital assets. As this court pointed out in *Ahern v Ahern* (94 AD2d 53, 56): "Pursuant to this statutory scheme it is quite clear that the parties 'must be prepared to present evidence' (*Roussos v Roussos,* 106 Misc 2d 583, 585) regarding the exact nature and value of the marital property in order to assist the court in reaching its determination. Accordingly, it has been held that both parties in a matrimonial action governed by the Equitable Distribution Law are now entitled to: 'a searching exploration of each other's assets and dealings at the time of and during the marriage, so as to delineate the extent of "marital property", distinguish it from "separate property", uncover hidden assets of "marital property", discover possible waste of "marital property", and in general gain any information which may bear on the issue of equitable distribution, as well as maintenance and child support. The entire financial history of the marriage must be open for inspection by both parties. It is simply no longer true that the current financial status of the parties is all that counts' (*Roussos v Roussos,* 106 Misc 2d 583, 584-585, *supra;* see, also, *Gueli v Gueli,* 106 Misc 2d 877; *Fay v Fay,* 108 Misc 2d 373; *Litman v Litman,* 115 Misc 2d 230)." To this same end, the Equitable Distribution Law expanded the types of monetary awards which may be provided to a needy spouse to carry on or defend a matrimonial action to encompass not only *pendente lite* counsel fees, but also awards to provide for the services of accountants and appraisers in recognition of their vital role in this often sophisticated and complicated process (Domestic Relations Law, § 237, subd [c]; see, also, *Conner v Conner, supra; Ahern v Ahern, supra; Gueli v Gueli,* 106 Misc 2d 877).

The process of evaluating a closely held corporation where such corporation or a part thereof is a marital asset, necessarily complicates the court's task even further. Due to the inherent nature of such corporations, in which

ownership is generally vested in a small group of stockholders and in which the shares are not usually salable, the value of the shares therein often cannot be measured by objective evidence of fair market value, i.e., "the price for which the property would sell if there was a willing buyer who was under no compulsion to buy and a willing seller under no compulsion to sell" (see *Keator v State of New York,* 23 NY2d 337, 339). One commentator on the problem has noted that "[w]hen the property is not freely exchanged, as is the usual case with stock of closely held corporations, valuation not only demands considerable judgement [*sic*] but also invites dispute" (Foster, NY Equitable Distribution Divorce Law, p 376). The methods of making an evaluation in these circumstances are not exact since neither book value, nor sales of stock when they occur, may prove to be reliable indicators of real worth (see Welch, Discovery and Valuation in a Divorce Division Involving a Closely-Held Business or Professional Practice, 7 Comm Prop J 103, 114-115; Perocci and Walsh, Putting A Value On: Closely Held Corporations, 2 Fam Advoc 32, 33).

One of the most widely accepted and comprehensive approaches to the valuation of closely held and professional corporations is that recommended by the Internal Revenue Service's Revenue Ruling 59-60 (IRS, Internal Revenue Bulletin [1959], p 237; see *Muller v Muller,* 116 Misc 2d 660, 668; *Nehorayoff v Nehorayoff,* 108 Misc 2d 311, 316; Foster, *op. cit.,* p 377; Perocci and Walsh, *op. cit.,* p 33; Grosman, Identification and Valuation of Assets Subject to Equitable Distribution, 56 ND L Rev 201, 219-220). As noted by the court in *Nehorayoff* (*supra,* p 317):

"Revenue Ruling 59-60 identifies eight fundamental factors which should be analyzed in arriving at a valuation:

"(1) The nature of the business and the history of the enterprise from its inception.

"(2) The economic outlook in general and the condition and outlook of the specific industry in particular.

"(3) The book value of the stock and the financial condition of the business.

"(4) The earning capacity of the company.

"(5) The dividend-paying capacity.

"(6) Whether or not the enterprise has good-will or other intangible value.

"(7) Sales of the stock and the size of the block of stock to be valued.

"(8) The market price of stocks of corporations engaged in the same or a similar line of business having their stocks actively traded in a free and open market."

A bona fide buy-sell agreement which predates the marital discord, while not conclusive, may also prove an invaluable aid (see *Lee v Lee,* 93 AD2d 221, 226; Dileo & Model, A Survey of the Law of Property Disposition Upon Divorce in the Tristate Area, 56 St. John's L Rev 219, 251; Foster, *op. cit.,* p 366).

It is obvious, therefore, that the requirements of a meaningful evaluation mandate a fairly extensive audit of the financial affairs of the corporation and that a spouse's status as a majority or minority shareholder is irrelevant to that process. What is at issue is an assessment of the value of an entire enterprise in order to determine the value of the individual shares in that enterprise. That being the case, it matters not whether the shareholder spouse owns 49% or 51% of the outstanding shares. The nonowner spouse is entitled to a proper evaluation of the shareholder spouse's interest in the corporation, regardless of the extent of that interest.

Where the issue has been addressed in States governed by equitable distribution laws, the same conclusion has been reached. In *Gerson v Gerson* (148 NJ Super 194, 200), the court ruled that in the case of a closely held corporation the only feasible method of valuating a spouse's ownership interest "lies in an examination of the corporation's entire financial structure and condition". In *Merns v Merns* (185 NJ Super 529, 532), the court extended the rule of *Gerson* (*supra*) to minority shareholders, reasoning that its responsibility to equitably distribute marital property is in reality no less where a spouse owns less than 50% of a family-owned corporation's stock. In addition, a North Carolina court has held that where a trial court must determine the true worth and income of the parties, corporate records are appropriate objects of a subpoena duces

tecum where a substantial portion of a spouse's total worth is stock in a closely held corporation (*Quick v Quick,* 305 NC 446, 460; see, also, *Palmer v Servis,* 393 So 2d 653, 655 [Fla App]; *Rifkind v Superior Ct.,* 123 Cal App 3d 1045, 1052).

Few valid rationales have been advanced to support blanket prohibitions upon such disclosure. Requests for irrelevant and unnecessary items may always be addressed by appropriately defined protective orders; so, too, unnecessary invasions of privacy may be curtailed (see, e.g., *Cherno v Cherno,* 118 Misc 2d 950, 952-953; *Wells v Wells,* 108 Misc 2d 501, 505; *Stolowitz v Stolowitz,* 106 Misc 2d 853, 859; *Merns v Merns, supra,* p 532). Obviously, the court must carefully monitor and analyze the extent of such disclosure in each case.

Our previous holdings in *Ingarra v Ingarra* (75 AD2d 576) and *Raved v Raved* (71 AD2d 883), prohibiting extensive disclosure of corporate finances in cases involving spouses who are minority shareholders, do not conflict with the views which we express herein. In those pre-equitable distribution cases, valuation of marital assets for purposes of distribution was simply not in issue. Financial disclosure was sought in those cases for purposes of fixing awards of alimony and child support. The nonowner spouse had no interest in or claim to the shares themselves, only a claim to be supported in a manner consistent with the parties' financial circumstances.

Nor does our opinion conflict with our decisions in *Rubin v Rubin* (87 AD2d 587, *supra*) and *Fox v Fox* (96 AD2d 571), which were decided under equitable distribution principles. Although the issue was raised in *Rubin,* it was not reached because of our finding that the defendant was a 50% shareholder rather than a minority shareholder (see *Carella v Carella,* 97 AD2d 394; *Ruggiero v Ruggiero,* 100 AD2d 875). And in *Fox (supra),* the issue was not presented since the husband in that case, the individual from whom disclosure regarding corporate finances was sought, was only a corporate officer and not a shareholder. Thus, since there were no shares of corporate stock to be evaluated and distributed, we found that an extensive audit of the financial affairs of the corporation was unwarranted and limited

disclosure to those items necessary to determine the extent of the amounts of payments and other forms of compensation actually made to the husband.

■ Turning, then, to the instant case, we find the interrogatories propounded by plaintiff with regard to the three corporations in which defendant holds a minority interest to be appropriate. Her requests for the identity of corporate bank accounts, agreements between defendant and the business or other shareholders, corporate balance sheets and tax returns for the specified years, are reasonable and necessary for preliminary characterization and valuation of shares of those corporations in which defendant is a shareholder. This information is relevant to the disclosure of the economic history of the corporations and consequently bears directly upon the valuation of the shares. Only by examining the financial condition of the corporations during the period just prior to and during the marriage can a proper assessment be made of the value of the shares held by defendant and any appreciation in value during the course of the parties' marriage. Thus, to the extent the information requested by plaintiff is within defendant's possession, custody and control, he is directed to comply with interrogatories numbered 1, 2 and 3. We would note, further, that as a result of the recent addition of CPLR 3130 (subd 2) (L 1983, ch 275), upon a motion of a party in a matrimonial action, the court, in its discretion, may direct a nonparty to respond to written interrogatories concerning financial information regarding a party to the action. Accordingly, to the extent that any of the information sought in the interrogatories is not within defendant's control, plaintiff, if so advised, may seek leave of Special Term to serve interrogatories on the corporations themselves.

With regard to the corporation which is the subject of interrogatory numbered 4, however, in which defendant has no ownership interest, the situation is analogous to that presented in *Fox* (*supra*). As there are no shares of stock in that corporation to be evaluated and distributed, an extensive audit of the financial affairs of that corporation is not warranted. As in *Fox*, however, the problems of obtaining disclosure regarding defendant's financial rela-

tionship with this closely held family corporation, which apparently has significant links with the other three corporations, may justify limited examination of the corporate affairs. Of the interrogatories in question, however, we find only paragraph (f) of interrogatory numbered 4 requesting information regarding any agreement between defendant and the corporation and its shareholders to be appropriate. Accordingly, we sustain so much of the order as struck paragraphs (e), (h) and (i) of that interrogatory. We would again note, however, the availability of CPLR 3130 (subd 2) under which plaintiff may seek leave to serve interrogatories on the corporation if she be so advised.

■ We would agree with Special Term that the remaining interrogatories were properly stricken. While plaintiff was entitled to accurate summaries of defendant's personal expenditures during the past five years and access to his records to verify his answers, the requests for detailed calculations as to each individual purchase and transaction were unduly burdensome. Moreover, we would note that the request for information which would require defendant to separately list expenditures on behalf of the corespondent named in the adultery cause of action was in the nature of discovery on the issue of fault, unnecessary "to establish [plaintiff's] cause of action for divorce", and unnecessary for the purpose of determining the extent of defendant's income (see *Van Ess v Van Ess,* 100 AD2d 848; *Blickstein v Blickstein,* 99 AD2d 287).

■ With respect to Special Term's direction that disclosure in this case should be limited to the three-year period preceding the commencement of this action, we disagree. We have consistently held that there should be broad disclosure in equitable distribution actions and that the entire financial history of the marriage is open for examination by either party (see *Ahern v Ahern,* 94 AD2d 53, *supra*). Indeed, we have recognized that in certain cases disclosure may even extend beyond the period of the marriage (see *Fox v Fox, supra; Lee v Lee,* 93 AD2d 221, *supra*). In the instant case, we conclude that plaintiff's requests for various financial data spanning a five-year period was not unreasonable and she should not have been limited to the three years preceding commencement of the divorce pro-

ceeding (see, also, *Roussos v Roussos,* 106 Misc 2d 583, *supra*).

⬛ Finally, we find that plaintiff's initial use of interrogatories as a disclosure device in this case did not constitute an abuse necessitating an exercise of discretion by Special Term to expedite disclosure. The general rule is that a party is "free to choose both the [pretrial disclosure] devices it wishes to use and the order in which to use them" (*Barouh Eaton Allen Corp. v International Business Machs. Corp.,* 76 AD2d 873, 874). Further, the use of interrogatories as an initial disclosure device in complex equitable distribution cases will, in our view, expedite the discovery process (see *Myers v Myers,* 108 Misc 2d 553; Scheinkman, 1981 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, C236B:6; Brandes, Disclosure Requirements Under Equitable Distribution, NYLJ, June 21, 1983, p 1, col 2). Accordingly, Special Term's direction that the parties proceed to depositions upon oral examination will not expedite disclosure but may instead operate to prejudice plaintiff by preventing use of another, more appropriate, intermediate device.

TITONE, J. P., MANGANO and O'CONNOR, JJ., concur.

Order modified, on the law, by (1) deleting the provision thereof which struck paragraphs (e), (f), (h) and (i) of interrogatories numbered 1, 2 and 3, and paragraph (f) of interrogatory numbered 4; (2) deleting the provision thereof which limited the period for disclosure to the three years immediately preceding the commencement of the action, and (3) deleting the provision thereof which directed the parties to proceed to depositions upon oral examination. As so modified, order affirmed insofar as appealed from, without costs or disbursements. Defendant's time to complete and serve answers to plaintiff's interrogatories in accordance herewith is extended until 30 days after service upon him of a copy of the order to be made hereon, with notice of entry.