(March 28, 1985)

■ CLAIRE LOBATTO, Respondent-Appellant, v FRED A. LOBATTO, Appellant-Respondent. — Order, Supreme Court, New

York County (Hortense Gabel, J.), entered July 18, 1984, granting plaintiff wife $3,105 for unpaid medical expenses, granting plaintiff exclusive use of the parties' Vermont summer home during August 1984 and alternate months thereafter, directing defendant to make available an automobile for plaintiff's exclusive use during the period in which she is using the Vermont home, denying defendant's request for a protective order with respect to interrogatories, and awarding plaintiff $750 counsel fees on the motion, unanimously modified, on the law, the facts and in the exercise of discretion, by partially granting a protective order only to the extent of striking interrogatories numbered 2, 6, 7 (c), 33 (b), 53, 64-65 and 71, and otherwise affirmed as subsequently modified on reargument, without costs.

Order, Supreme Court, New York County (Hortense Gabel, J.), entered October 2, 1984, on reargument, awarding plaintiff an additional $15,000 as interim counsel fees, unanimously affirmed, without costs.

The parties were married in 1962. There are no issue of the marriage, each party having two emancipated children from prior marriages. Primarily at issue on this appeal is the propriety of lengthy interrogatories served by plaintiff. There are 73 interrogatories, broken down into 315 subdivided questions, some of which themselves call for multiple answers. Some of these interrogatories are boilerplate questions which, with any degree of responsible formulation, should have been eliminated by plaintiff's attorney. For example, interrogatory number 2 seeks detailed data on children born or adopted during the marriage. The fact that there are no issue of this marriage is conceded in the pleadings. Such irrelevancies may render an entire set of interrogatories burdensome and oppressive. The appropriate remedy is not judicial pruning, but vacatur of the interrogatories in their entirety (see, e.g., Brandon v Chefetz, 101 AD2d 786; Metzger v Brockman, 92 AD2d 499, 500).

Unfortunately, however, lengthy and detailed interrogatories may be necessitated by the complexity of the case at hand or the unwillingness of a party to furnish plainly requisite information. Here, both factors are at work. The case has been here previously. It was then clearly established that the husband earned approximately $125,000 per year and had assets of at least $2.5 million and that the wife had neither independent income nor assets of her own (102 AD2d 728). Defendant has placed his entire financial and property holdings in issue by asserting that plaintiff has absolutely no entitlement to any of these holdings. Specifically, defendant owned three real estate properties when he entered into the marriage with plaintiff, two

of which he still retains. During the marriage of 22 years' duration, he acquired 12 additional properties. Defendant insists that all of these acquisitions were generated from his own assets. Thus, the 12 new properties, which appreciated in value during the course of the marriage from $500,000 to $3.2 million, should, according to defendant, be considered separate property of his rather than marital property for the purpose of equitable distribution.

Defendant furnished a list of his 14 properties and the percentage he owns of each. Plaintiff seeks a net worth statement that gives the date of acquisition, cost, fair market value, and the existence, date and amount of any lien on each of these properties, in accordance with 22 NYCRR 117.2. She sought such data through interrogatories — acquisition date, cost, financing, rental income, expenses, etc. — and a demand for copies of deeds, closing statements and appraisals. Defendant responded that all these properties currently held were either purchased prior to the marriage or resulted from refinancing of properties owned prior to the marriage.

Domestic Relations Law § 236 (B) (4) provides for compulsory financial disclosure in matrimonial proceedings where support is in issue, without any showing of special circumstances for such disclosure. In the interest of an orderly trial of the issue of equitable distribution, the statute requires broad disclosure in the form of a "searching exploration of [the parties'] assets and financial dealings, including their interests in business entities, at the time of and during the marriage." (*Rubin v Rubin,* 87 AD2d 587.)

The purpose of such a probe is to allow a determination as to what constitutes marital property, to distinguish it from separate property, uncover hidden assets of the marriage, and generally gather any information bearing on the issue of equitable distribution. "The entire financial history of the marriage must be open for inspection by both parties. It is simply no longer true that the current financial status of the parties is all that counts." (*Roussos v Roussos,* 106 Misc 2d 583, 585.)

This broad discovery device in matrimonial actions, without the requirement of any showing of special circumstances, is a fairly recent development in New York law. Since 1975, with the enactment of Domestic Relations Law former § 250, the requirement of a showing of special circumstances was eliminated as a prerequisite to compulsory disclosure in matrimonial actions where financial support is in issue. As a result, this is now an area ripe for discovery under CPLR 3101, which may be directed not just to property held at the commencement of the

action, but also to holdings and financial resources of a party going back over a considerable period of time. It is plain that in complicated equitable distribution cases the use of interrogatories as an initial discovery device is often the best and most realistic tool for full and expeditious financial disclosure. In *Kaye v Kaye* (102 AD2d 682), the court held that a proper assessment of the "entire financial history of the marriage is open for examination by either party" (p 691) and might very well require an examination of financial conditions "during the period just prior to and during the marriage" (p 690; *see also, in general,* 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.19).

It cannot be denied that this is a lengthy set of interrogatories. But this is also a lengthy and difficult case (*cf. Woodmere Academy v Steinberg,* 51 AD2d 514), made so by defendant's position that all of his assets amassed over the course of this more than 20-year marriage are separate property belonging solely to him. Only by a detailed tracing of the sources of these assets and their increase in value can such a position be sustained. Defendant asserts he is prepared to demonstrate that his 12 acquired properties all sprung from assets separately held prior to the marriage. The only way plaintiff can challenge that assertion is to have evidence of the financial sources of these assets. For example, when defendant learned of an impending real estate cooperative conversion, he obtained a leasehold interest in an apartment in the building at an insider price. He put the apartment in the names of his daughter and her husband. Plaintiff has a right to know the financial background of this investment and the result of the transaction.

The fact that plaintiff also seeks to depose defendant should not preclude defendant's response to interrogatories. In a case of such complexity, plaintiff is entitled to sufficient information, through interrogatories, to provide a basis for a meaningful and fruitful deposition. (*See, Comstock & Co. v City of New York,* 80 AD2d 805, 807; *cf. Cunningham v Hagedorn,* 77 AD2d 856, where burdensome interrogatories intended to be answered *after* deposition were vacated without prejudice.)

Viewed in this light, this is not an overly broad or generalized set of interrogatories, served with an intention to harass or vex (*cf. Melnick v Melnick,* 85 AD2d 531). These are not blanket demands for production of documentation and data, without any specificity, amounting to a "broad fishing expedition" which would fail to meet the "requisite standard of reasonable particularity" in identifying the information sought to be produced (*Nankof v ARA Servs.,* 96 AD2d 493, 494). Defendant, having placed in issue whether any of his holdings are marital property,

must now be prepared to defend and substantiate that position. By and large, these very specifically drawn interrogatories are directed toward that end. The fact that they are so lengthy and comprehensive is not entirely the fault of plaintiff. Defendant raises no issue by merely setting forth a verbatim repetition of these interrogatories in his brief.

In the interest of expediting the resolution of this case, we will undertake the often-eschewed task of deleting certain of the interrogatories. As already indicated, interrogatory number 2 is unnecessary and irrelevant.

Interrogatory number 6 asks the identity and relationship of any person with whom defendant is currently residing and the frequency of the arrangement. Interrogatory number 7 (c) asks the identity and extent to which anyone else is contributing to his current rent. In other words, defendant is being asked whether anyone else is sharing an apartment with him. Interrogatory number 64 seeks the identity and relationship of anyone else contributing to defendant's support, income or living expenses. All of these questions are personal in nature and really relate more to the question of fault rather than the real purpose for these detailed interrogatories, namely, disclosure of the financial sources of defendant's assets. Plaintiff alleges that defendant may have been supporting a paramour. If this is the subject of these inquires, and assuming but not concluding that they are relevant, then plaintiff should have framed her interrogatories along the lines of whether he is contributing to anyone else's support. As currently framed, these three interrogatories are irrelevant.

In interrogatory number 33 (b) plaintiff asks for a listing of all personal and business/corporate attorneys consulted during the past five years (other than on this case). Such a request is overly broad, and might arguably invade a party's right to confidentiality with legal counsel. Its relevance does not appear.

Interrogatory number 53 seeks data on the nature and amount of any expected inheritance. Such a request is not directed to any past inheritance received, but merely seeks speculation on future inheritance from someone who is yet alive. Aside from the difficulty in making such speculation, plaintiff has no right to such information, and it is highly questionable whether she would have a right to share in such future assets anyway.

Interrogatory number 65 seeks the identity of expert witnesses expected to testify on defendant's behalf, and the nature of their area of expertise. Plaintiff also seeks copies of all written reports or summaries of oral reports rendered by these prospec-

tive witnesses. Absent a showing of special circumstances warranting such disclosure (*Kincaid v Sears, Roebuck & Co.,* 79 AD2d 1094, 1095), defendant is not required to identify or reveal such data on discovery (CPLR 3101 [d] [1]; *Nagel v Metzger,* 96 AD2d 738, 739).

Interrogatory number 71 seeks an itemization of counsel fees paid or agreed to be paid by defendant for legal services rendered. Plaintiff asserts that the divulging of such information is "statutorily mandated" by the rules of court. The statement of net worth prescribed in 22 NYCRR 117.2 calls, in item VIII, for a listing of counsel fees requested and paid. However, it is clear that such information is only required where defendant would be asking for an award of counsel fees from plaintiff. Such is not the case.

With the exception of the specific questions discussed above, the interrogatories as a whole are generally on point. An example of the crucial nature of the data sought can be summarized in defendant's objection to interrogatory number 14B. There plaintiff demands particulars with regard to each refinanced property, including date of refinancing, appraisal value at the time, existing indebtedness on each property, the amount sought in refinancing, the identity of the mortgagee, the use of moneys obtained, and whether a mortgage application was furnished. In addition, copies of the mortgage, note, mortgage application and closing statement are sought. Such an interrogatory goes to the very heart of this case. These are, in effect, proper demands for the basis of defendant's own assertions. In the final analysis, it is defendant's strategy of defense that has necessitated these interrogatories. Concur — Murphy, P. J., Kupferman, Fein and Milonas, JJ.