■ HAROLD K. ROSENBERG, Respondent, v SUSAN ROSENBERG, Appellant.—In an action for a divorce and ancillary relief, the defendant wife appeals, as limited by her brief, from stated portions of a judgment of the Supreme Court, Nassau County (Di Paola, J.), entered August 28, 1984, which, *inter alia,* upon granting the plaintiff a judgment of divorce, (1) awarded the defendant only a 25% interest in all marital property, which award reflected a .5% reduction attributed specifically to her marital fault; (2) valued the plaintiff's stock in Napco Security Systems, Inc. at $528,000, based on a 1976 shareholder's agreement, and awarded the defendant only 25% of that amount; (3) valued the parties' brokerage accounts as of the date this action was commenced; (4) held that coins in the possession of the plaintiff were his separate property; (5) permitted plaintiff to pay the defendant a distributive award in the amount of $150,000 to be paid in installments of $1,250 per month, without interest; (6) awarded the defendant exclusive use and occupancy of the marital premises until the parties' youngest son reaches the age of 18, conditioned upon the defendant remaining unmarried; and (7) awarded the defendant custody of the parties' two minor sons on condition, *inter alia,* that she not allow them contact with her paramour.

Ordered that the judgment is modified, on the law and the facts, by (1) deleting subdivision (a) of the third decretal paragraph thereof, (2) deleting the fifth decretal paragraph thereof, (3) deleting from the ninth decretal paragraph thereof the words "the sum of $48,750", "75% of the proceeds of the

sale of securities", "750 shares of Turning Basin, Inc. Stock", and "75% of the proceeds of said money market account" and substituting therefor, respectively, the words "the sum of $32,500", "50% of the proceeds of the sale of securities", "500 shares of Turning Basin, Inc. stock", and "50% of the proceeds of said money market account", (4) deleting from the tenth decretal paragraph thereof the words "75% of the IRA account", "75% of the former marital residence" and "75% of the furniture and furnishings contained therein", and substituting therefor, respectively, the words "50% of the value of the IRA account as of the date this action was commenced", "50% of the former marital residence", and "50% of the furniture and furnishings therein contained", (5) deleting from the eleventh decretal paragraph thereof the words "the total sum of $133,750", "the sum of $16,250 representing her 25% interest in the proceeds of the three brokerage accounts", "250 shares of Turning Basin, Inc. stock" and "25% of the money market account", and substituting therefor, respectively, the words "the total sum of $161,900", "The sum of $32,500 representing her 50% interest in the proceeds of the three brokerage accounts", "500 shares of Turning Basin, Inc. stock", and "50% of the money market account", (6) deleting from the twelfth decretal paragraph thereof all references to the figure "25%", and substituting therefor the figure "50%", (7) deleting from the thirteenth decretal paragraph thereof the words "the defendant remaining single and unmarried," and adding thereto the words "without prejudice to an application by the plaintiff for termination of defendant's exclusive occupancy of the marital premises in the event that she occupies said residence with a male person other than the plaintiff or the parties' children"; (8) deleting from the fourteenth and fifteenth decretal paragraphs thereof all references to the figures "75%" and "25%", and substituting therefor the figure "50%", (9) deleting from the sixteenth decretal paragraph thereof the figures "$133,750" and "$16,250" and substituting therefor, respectively, the figure "$161,900" and "$32,500", and deleting from the sixteenth decretal parragraph thereof all references to the figure "$150,000" and substituting therefor the figure "$194,400" and (10) deleting from the seventeenth, eighteenth, and nineteenth decretal paragraphs thereof all references to the figure "$150,000" and substituting therefor the figure "$194,400". As so modified, the judgment is affirmed, insofar as appealed from, without costs or disbursements.

Upon a review of the record, we find that the trial court

erred in awarding the defendant wife only a 30% interest in all of the marital assets and in further reducing that award an additional 5% on account of marital fault. Generally, "the marital fault of a party is not a relevant consideration under the Equitable Distribution Law in distributing marital property upon the dissolution of a marriage" *(Blickstein v Blickstein,* 99 AD2d 287, 292, *appeal dismissed* 62 NY2d 802; *see also, O'Brien v O'Brien,* 66 NY2d 576, 589-590). Marital fault becomes relevant only in situations "in which the marital misconduct is so egregious or uncivilized as to bespeak of a blatant disregard of the marital relationship—misconduct that 'shocks the conscience' of the court" *(Blickstein v Blickstein, supra,* at p 292). Here, the defendant's adulterous relationship, even in spite of her incredible denial of the same, does not, without more, warrant a reduction in her share of the marital property *(see, Nolan v Nolan,* 107 AD2d 190; *Pacifico v Pacifico,* 101 AD2d 709). Furthermore, while the record supports an award to the defendant of the value of only 30% of the plaintiff's interest in his business, Napco Security Systems, Inc., since it was primarily the plaintiff's personal contributions that gave rise to and nurtured the continuous development of that interest, we find no basis in the record for awarding the defendant less than a 50% interest in the remaining marital assets, under the circumstances of this case.

We find that the trial court properly valued the plaintiff's unregistered restricted legend stock in Napco Security Systems, Inc., based on a 1976 shareholder's agreement which afforded other controlling shareholders a right of first refusal in the event that the plaintiff's stock was sold. A bona fide buy-sell agreement which predates the marital discord can prove an invaluable aid in assessing the value of an interest of this kind *(see, Kaye v Kaye,* 102 AD2d 682, 688). Although the defendant certainly had ample opportunity to demonstrate why the agreement should not be given effect *(see, Lee v Lee,* 93 AD2d 221, 226), she failed to produce any evidence of any pending action which might vitiate the plaintiff's obligations under the agreement. Any appraisal of the value of the stock based on a potential sale outside of the terms of the agreement would have been purely speculative *(see, Amodio v Amodio,* 122 AD2d 757). The Equitable Distribution Law cannot give someone a right that does not exist, nor can it change rights as may already exist among shareholders, thereby awarding an interest in a corporation for equitable distribution purposes greater than that agreed upon among

the shareholders and binding upon them *(see, Cherno v Cherno,* 118 Misc 2d 950, 954).

The court did not abuse its discretion in setting the commencement of the action, as opposed to the time of trial, as the valuation date for the parties' brokerage accounts. A trial court is afforded discretion regarding the setting of valuation dates under the Equitable Distribution Law *(see, Wegman v Wegman,* 123 AD2d 220). Here, although the plaintiff seemingly benefited by the earlier date, the defendant has not been held even partially responsible for past due income taxes which the plaintiff paid with a portion of the brokerage account funds. Thus, this valuation date, in the final analysis, did not unfairly prejudice the defendant. Further, the trial court directed that the parties share in all the funds in the money market account as of its date of liquidation. Thus, both parties were awarded a share of the interest which accrued after this action was commenced. We note that the court failed to set a valuation date for the defendant's individual retirement account (hereinafter IRA). Since the plaintiff's IRA account was valued as of the date on which this action was commenced, equity requires that the same valuation date be set in reference to the distribution of the defendant's IRA. The court's distribution of the coins to the plaintiff as his separate property obviously rested on an assessment of credibility which this court will not disturb *(see, Cataudella v Cataudella,* 74 AD2d 893).

Given the plaintiff's numerous and substantial financial obligations and the need and desirability for him to retain his interest in NAPCO Security Systems, Inc., the court did not abuse its discretion in providing for a distributive award pursuant to Domestic Relations Law § 236 (B) (5) (e). Moreover, the failure to award interest on the award, under these circumstances, was not an abuse of discretion. Considering the amount of the distributive award, the plaintiff's ability to pay interest is very questionable, as is his ability to pay out any additional sums. Thus, though we have increased the defendant's distributive award, we refuse to disturb the rate of payment of $1,250 per month which was set by the trial court. We note that the defendant has been afforded an option, if she be so disposed, to accelerate her realization of the distributive award through an early sale of the marital premises.

The court's restrictions on the defendant's award of custody of the parties' two minor children cannot be permitted to stand. Custody here was uncontested, yet the plaintiff sought to exclude the defendant's paramour from the children's

presence and the defendant's home. While the defendant's paramour's effect on the children would certainly be a relevant consideration in assessing the children's best interests, the solution, if a negative or detrimental effect were indeed established, would be to award the plaintiff custody of the children (see, Dornbusch v Dornbusch, 110 AD2d 808). A custodial parent has a right to develop his or her own interests or personal life (Bryan v Bryan, 99 AD2d 743). While a custodial parent always retains the risk of losing custody in the future if his or her life-style does not coincide with the children's best interests, the court, in actions of this kind, lacks the authority to grant custody to the custodial parent saddled with restrictions which the noncustodial parent who himself does not want custody desires to have imposed. The defendant and her paramour certainly must be strongly encouraged to refrain from interfering in any way with the development of a healthy relationship between the plaintiff and his sons and the plaintiff is always free to petition the court for a change in custody if he believes that the circumstances so warrant. Nevertheless, the defendant has the right to have her paramour visit in her home and to marry him without fear of an automatic loss of custody (see, Barie v Faulkner, 115 AD2d 1003). However, we have provided that the plaintiff may make application for a termination of the defendant's award of exclusive occupancy of the marital residence in the event that she resides therein with a male person other than the plaintiff because such a change in circumstances might very well justify a modification of the award. Mollen, P. J., Brown, Niehoff and Kooper, JJ., concur.