(January 26, 2012)

■ WENDY HAKIM JAFFE, Appellant, v ROBERT JAFFE, Respondent. [940 NYS2d 1]—

In this divorce action, defendant served 37 nonparty subpoenas on the business office maintained by plaintiff's father. Each subpoena was addressed to a different entity closely held by, or affiliated with, plaintiff's family, which has many real estate holdings. Plaintiff acknowledges that, before the marriage, she had minority interests in many of the entities and that during the marriage she transferred the interests in those companies to a single holding company in exchange for a 25% interest in the holding company. Unlike two of her siblings, plaintiff was given no current or future managerial authority in the holding company. Defendant also addressed subpoenas to SC Management, the company that manages the real estate holdings of the various LLCs. Plaintiff claims to have no interest in SC Management or six other entities that received subpoenas. In addition to the entities affiliated with plaintiff's family, defendant served a subpoena on Bank of New York Mellon, seeking documents related to accounts maintained there by all of the entities in which plaintiff held an interest, as well as SC Management and eight other entities in which plaintiff denies having any interest.

The subpoenas addressed to the entities in which plaintiff had transferred her interest to the holding company differed from each other in some respects, but they uniformly sought financial statements; tax returns; detailed fixed asset registers and depreciation schedules for all assets held; building permits filed between 1996 and 2000; rent rolls identifying all tenants, their apartment numbers, their leases, the square footage of their apartments, and a calculation of their rent per square foot; documents reflecting "in kind" payments or barter transactions with any entity owned by the Hakim Organization, or with any employee, partner or shareholder of such entity; board meeting or other entity meeting minutes; business plans and projections; 1099s with copies of cancelled checks; ownership, operating, management, or subscription agreements; agreements of understanding signed by plaintiff; ownership schedules and stock transfer ledgers, including copies of front and back of all shares issued; copies of credit applications made to a bank or to other creditors; and outside accountants' working paper files and business evaluations or real estate appraisals conducted during the marriage.

Plaintiff moved to quash the subpoenas. She argued that the subpoenas were duplicative of discovery demands defendant had served on her directly (to which she also objected), and that they were intended solely to harass her parents. Indeed, plaintiff asserted, the subpoenas were served on the eve of Rosh Hashanah and immediately after defendant threatened to estab-

lish that plaintiff's parents were tax evaders. She further contended that, to the extent she had interests in the entities to which the subpoenas were addressed, it was separate property and had no bearing on the distribution of the parties' marital assets. She claimed to have no active role in the companies that would have caused any appreciation in their value to become marital property.

In opposition to the motion, defendant argued that the documents and information sought by the subpoenas were necessary to determine whether a portion of plaintiff's family assets is marital property and because the documents bear on maintenance and child support. Pointing to documents he had already discovered during the litigation, defendant submitted that "[m]onies flow[ed] freely" among the subpoenaed entities and that plaintiff was active in the management and development of her family's real estate holdings. Defendant further asserted that the subpoenaed entities regularly made loans to various management companies controlled by the family, particularly SC Management, and used the management companies to pay for family members' personal expenses. Defendant stated that the discovery he sought was relevant to the issue of whether plaintiff's actions caused appreciation to the separate property that should then be included in the marital estate. He also argued that, even if plaintiff's interests in the entities were nonmarital, they were still relevant under Domestic Relations Law § 236 (B) (5) (d) (9), which requires the court, in determining equitable distribution, to consider "the probable future financial circumstances of each party."

The court granted the motion in part and denied it in part. It held that nonparty discovery was appropriate as to those entities in which plaintiff conceded having an interest. However, it quashed the subpoenas for all companies in which plaintiff claimed to have no ownership interest, except for SC Management. The court found that there was evidence, such as checks payable to plaintiff, that "raise[d] the possibility" that plaintiff received compensation for work she performed for that company. The court did not expressly address the subpoena served on Bank of New York.

In a divorce action, "[b]road pretrial disclosure which enables both spouses to obtain necessary information regarding the value and nature of the marital assets is critical if the trial court is to properly distribute the marital assets" (*Kaye v Kaye*, 102 AD2d 682, 686 [1984]). Indeed, in *Kaye*, the court denied the husband's motion for a protective order preventing discovery into four closely held family corporations in which he held

minority interests, observing, "[I]t has been held that both parties in a matrimonial action governed by the Equitable Distribution Law are now entitled to: a searching exploration of each other's assets and dealings at the time of and during the marriage, so as to delineate the extent of marital property, distinguish it from separate property, uncover hidden assets of marital property, discover possible waste of marital property, and in general gain any information which may bear on the issue of equitable distribution, as well as maintenance and child support. The entire financial history of the marriage must be open for inspection by both parties" (*id.* [internal quotation marks omitted]).

Pursuant to this rule of liberal discovery in matrimonial litigation, defendant is entitled to records of the entities in which plaintiff has an interest, so that he may determine whether her interests have a bearing on the distribution of the marital estate as well as support obligations. However, we find that defendant has failed to establish that plaintiff has any interest in SC Management; accordingly, the subpoena served on that entity should have been quashed. Further, to the extent the subpoena served on Bank of New York Mellon seeks records related to SC Management, El-Kam Realty, Aval Company, Old Salem Farm Acquisition Corporation and Affiliates, Enterprise Products Partners LP, Nantucket Campfire, LLC, Bedford Entities, Buckingham Trading and Trading Partners, the bank need not comply. Defendant has also failed to demonstrate any affiliation between plaintiff and those entities. The bank is required, however, to divulge information related to the companies in which plaintiff has conceded having an interest.

While the entities in which plaintiff has an interest are thus not immune from discovery in this action, we agree with plaintiff that the subpoenas for those entities are overbroad in many respects. For example, the subpoenas include a demand to provide the names and addresses of all commercial and residential tenants, with copies of every lease, and all building permits filed for any building, including construction and renovations for every building plaintiff's family owned, over a 15-year period of time. This information appears to be of dubious relevance. Accordingly, the motion court must reconsider plaintiff's motion to determine whether the particular demands annexed to the subpoenas are sufficiently tailored to the financial issues in the action, and whether it would be unduly burdensome for the entities to respond.

The decision and order of this Court entered herein on September 15, 2011 (87 AD3d 901 [2011] is hereby recalled and

vacated (*see* 2012 NY Slip Op 62372[U] [decided simultaneously herewith]). Concur—Mazzarelli, J.P., Sweeny, Acosta, Renwick and DeGrasse, JJ.