Bert M. ROSTEL, Appellant,

v.

Kathryn M. ROSTEL, Appellee.

No. 5077.

Supreme Court of Alaska.

Jan. 16, 1981.

Michelle V. Minor, Anchorage, for appellant.

M. P. Evans and Robert I. Shoaf, Dickson, Evans, Esch & Papas, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

BURKE, Justice.

Bert and Kathryn Rostel were married in May, 1964. In April, 1978, Bert filed for divorce in Anchorage. Because the parties were unable to agree on a division of the marital property, a non-jury trial was held on February 7, 1979. One month later the court issued a written decision dividing the marital property roughly in half, and granting Kathryn $2,500 for her costs and attorney's fees. As part of the property division, Bert was awarded all the shares of the Rostel Corporation, valued by the court at $54,000. Bert's primary contention on appeal concerns this valuation.

The Rostel Corporation is a close corporation, founded in 1971. At the time of these proceedings it was owned equally by Bert and Kathryn. Its sole source of revenue is commissions on sales of electrical equipment earned by Bert, who is employed by the corporation and who represents different electrical manufacturers from outside Alaska. The court arrived at the $54,000 figure by averaging the corporation's income for the years 1976, 1977 and 1978, as established by the Rostels' joint income tax returns and withholding forms for those years. Bert claimed that the correct valuation was only around $22,000, representing the corporation's cash, earned commissions and equipment (automobiles and office furnishings).

■ On appeal, Bert renews his argument that "the income-earning capacity of a professional corporation owned by a married couple but which income-earning capacity is attributable solely to the expertise, talents and personality of one spouse is [not] 'property' subject to division by the

trial court upon divorce." We do not agree.[1] The majority of cases to consider the issue have held that in dividing marital property the trial court may attribute a valuation for a professional corporation's "goodwill" beyond the actual value of the corporation's assets. See, e.g., Marriage of Foster, 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974); Marriage of Goger, 557 P.2d 46 (Or. App.1976); Marriage of Lukens, 16 Wash. App. 481, 558 P.2d 279 (1976). In response to the argument that this "goodwill" is personal, unmarketable and therefore without value,[2] the Washington court said:

> While we do not disagree with the doctor's argument that his goodwill is not readily salable, we do not think it follows a fortiori that his goodwill is without value. The fallacy of Dr. Luken's argument is demonstrated by resort to common experience. The recently graduated young professional who goes into business for himself may reasonably expect the initial years of his practice to be less profitable, this expectation being attributed in part to a lack of goodwill or "that the old customers will resort to the old place." . . . Similarly, if Dr. Lukens were to abandon his Tacoma practice and relocate as a sole practitioner in another state, he also should anticipate a shortage of business, even though his practice consists of the same physical assets and he presumably possesses the same degree of skill. Again the difference must be attributed to his not having developed in his new locale a reputation as to skill, efficiency, and the other elements comprising goodwill.
>
> Accordingly we do not think the dispositive factor is whether Dr. Lukens can sell his goodwill. His goodwill has value despite its unmarketability, and so long as he maintains his osteopathic practice in Tacoma he will continue to receive a return on the goodwill associated with his

1. We note that the Rostel Corporation is not a professional corporation within the meaning of AS 10.45, as it does not render a professional service as defined in AS 10.45.250(1). But we do not believe this is relevant here, since the Rostel Corporation is as dependent on Bert's

skills as any professional corporation is on the skills of its shareholder(s).

2. This is the rationale of Nail v. Nail, 486 S.W.2d 761 (Tex.1972), cited by Bert.

name. The fact that professional goodwill may be elusive, intangible, and difficult to evaluate is not a proper reason to ignore its existence in a proper case, . . . and once its existence and value are ascertained, professional goodwill along with the other assets of the professional practice, should be included in a property division.

558 P.2d at 281–82 (citations omitted). We find that this rationale is applicable here.

Bert argues that even if this court finds as we have, that the income earning capacity of a sole corporation is divisible property, the lower court's valuation of the corporation is nevertheless reversible as a calculation based on income tax returns which were never admitted into evidence. Bert claims that the 1977 corporate income figure of $58,000, to which he testified, should have been used in the court's calculation of corporate value, rather than the $68,000 figure reported on the tax return. Although the transcript gives no indication that the tax returns were admitted, the 1977 return is marked admitted as Plaintiff's Exhibit 6 and appears on the clerk's list of exhibits introduced and admitted into evidence on February 8, 1978. The lower court's decision to rely upon the tax return, which Bert has never claimed is incorrect, rather than on the oral evidence, was not error. In light of our holding regarding the inclusion of goodwill in the calculation of corporate value, and in view of the reliability of the evidence used to reach that result, we uphold the lower court's determination of a corporate value of $54,000.

In addition to the question of corporate value, Bert raises a variety of other issues concerning the court's decision. Bert claims that the court erred in awarding "a note in the amount of $10,000.00" to Kathryn. There were, in fact, two notes owing to the Rostels, the balance owing on one equalling $9,541.69 and on the other $568.17. The total amount due on both notes was thus $10,109.86. While this value varies from the amount of the award by $109.86, we do not find the discrepancy of such significance as to require this court to overturn the decision below. The court's intent was apparently to award Kathryn both notes, having together an approximate value of $10,000.00. The decree should be modified to reflect this intent.

Also in connection with the award of these notes, Bert claims that the court erroneously ignored a verbal stipulation by the parties that Bert would accept payment of the second deed of trust on the family home in exchange for receipt of the two notes. Bert cites as support *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027 (Alaska 1972), where this court stated that, "sound judicial policy dictates that private settlements and stipulations between parties are to be revered and should not be lightly set aside." *Id.* at 1031 (footnote omitted).

The circumstances here are distinguishable from those in *Greater Anchorage Area Borough*, however. In that case, the stipulation in question was a carefully worded document which had been signed by both parties. Here the language targeted by Bert is one small portion of a general proposal by Kathryn's counsel. This proposal was made in response to the court's request for argument by each counsel on suggested property divisions based on need and utilization. The comments were indefinitely phrased at best and were couched in terms of one suggestion among many put forth by counsel.

The court was not required to adopt either counsel's proposal in its entirety but rather to reach a fair and equitable division of property. The lower court's decision to award the notes to Kathryn gave her property valued at $110,000. In allocating the debt obligation to Bert, the court noted that this would reduce the total value of Bert's property from $126,000 to $117,000. This allocation was not in derogation, but in furtherance of an equitable property division. This, too, was within the court's discretionary powers.

Bert further claims error in the court's failure to include the value of the furnishings in the family home as part of

the property divided. To allow Kathryn, who has principal custody of the children, to retain the furnishings in the home awarded to her is, we believe, in keeping with the lower court's decision based on need and utilization. The requirement that the property division be an equitable one does not require a perfectly even division. *Hurn v. Hurn*, 541 P.2d 360 (Alaska 1975); AS 09.-55.210(6). Kathryn points out that even if the value of the furnishings had been included in the property division, the division would still be equitable, although not perfect.

Also claimed as error is the lower court's failure to specifically assign the notes and deeds of trust encumbering various real properties. We find that the lower court's decision implicitly assigned liabilities to whichever party received that property. The decree should, however, be modified to reflect this clearly.

We reject Bert's contention that the $2,500 award to Kathryn of attorney's fees was unreasonable or excessive. Both the broad discretion of the trial court under AS 09.55.200(a)(1) [3] which Bert acknowledges, as well as the disparate financial circumstances of the parties supported the award of fees to Kathryn.

Bert's final point speaks to the award of the cash assets of the parties. We agree that the lower court's award of $4,500 to Kathryn and $2,000 to Bert was based upon an inaccurate exhibit which indicated that fully $6,500 in cash was to be divided, when in fact it had been conceded that $5,300 was the correct amount. On remand the ratio established by the lower court should be applied to the correct sum of cash available, thus awarding $3,657 to Kathryn and $1,643 to Bert.[4]

The decree of divorce is AFFIRMED and the case remanded for modification of the decree in accordance with this opinion.

**3.** AS 09.55.200(a)(1) provides:
During the pendency of the action, the court may provide by order
(1) that one spouse pay an amount of money as may be necessary to enable the other spouse to prosecute or defend the action.

*See also Burrell v. Burrell*, 537 P.2d 1, 6 (Alaska 1975).

**4.** This reflects the lower court's award of 69% of the cash assets to Kathryn and 31% to Bert.