OPINION OF THE COURT
Vincent R. Balletta, J.
This is a motion in which the defendant seeks to require the plaintiff to pay certain sums of money to enable the defendant to retain accountants, appraisers, and financial experts to evaluate certain marital property. The defendant had previously made a motion for the same relief and the motion was denied by order of this court dated October 23, 1981. In that order, Justice Pantano determined that the court did not have sufficient data upon which to make a determination, and indicated that before there could be any order directing the outlay of money, complete disclosure should be had setting out the nature of the capital assets, their location, and their alleged value. Further; the court indicated that it should be advised as to how many individuals in each category will be retained, what they will do, the need for their services, and their customary charges.
On the renewal of the motion, the defendant indicates that the plaintiff is both an attorney and a certified public accountant. She further alleges the plaintiff maintains an extremely successful law practice in New York City and employs approximately 20 persons. It should be noted that the defendant is a school teacher.
*231 Certain of the individual and corporate tax returns of the plaintiff have been submitted to an accountant retained by the defendant and the accountant has advised the defendant that numerous other documents and records are required in order to enable him to make a proper assessment and evaluation of the plaintiff’s corporate entity. The defendant indicates that this accountant will undertake this task for the sum of $75 per hour. The defendant has already incurred an obligation of $475 for the initial review, which she has not as yet paid, and will be required to pay additional amounts for the alleged substantial time required to complete the review. She also alleges that she must have an appraisal of the value of the plaintiff’s negligence practice. The defendant’s attorney states: “Pending litigations must be evaluated, and the value of Plaintiff’s professional corporation must be determined”. The defendant’s attorney indicates that they seek to retain a negligence lawyer to evaluate the practice and that he will be paid a retainer of $2,500 against $150 per hour. Furthermore, the defendant alleges that a review of the tax returns annexed to the moving papers indicates that the plaintiff has extensive tax shelters and real estate holdings which must be appraised and that an actuary must be retained whose services will run in excess of $2,500.
Although the moving papers recited that the tax returns and schedules were annexed thereto, they were not submitted on the motion, and thereafter the court wrote to both parties asking that these documents be submitted, which counsel for the defendant has now done.
Extensive financial discovery is now required by virtue of part B of section 236 of the Domestic Relations Law, commonly known as the Equitable Distribution Law. (Roussos v Roussos, 106 Misc 2d 583; Wells v Wells, 108 Misc 2d 501.) In an appropriate case, where a spouse cannot afford to retain the experts necessary to fully evaluate all the marital property subject to equitable distribution, the court is empowered to direct one spouse to pay to the other spouse funds sufficient to enable that spouse to carry out the necessary disclosure. (Gueli v Gueli, 106 Misc *232 2d 877; Fay v Fay, 108 Misc 2d 373; 11C Weinstein-Korn-Miller, NY Civ Prac, par 70.04.)
In the instant case, an examination of the parties’ joint tax returns, as well as the plaintiff’s corporate tax returns, indicates that there are apparently significant marital assets which may be the subject of equitable distribution. Furthermore, the defendant would be entitled to a valuation of these assets prior to the trial of this action. It also appears that the defendant is not presently in a position to pay the necessary professional fees.
Accordingly, the plaintiff is directed to pay to the defendant, within 30 days from the date hereof, the sum of $1,000 as and for accountants’ fees to enable her to properly examine the plaintiff’s records and to properly prepare for trial. The plaintiff is also directed to pay to the defendant, within 30 days from the date hereof, the sum of $1,000, which may be used for real estate appraisals in connection with the real property owned by the plaintiff.
Defendant’s request for funds to enable her to appraise the value of the plaintiff’s negligence law practice in order that there may be a distributive award is a completely different issue and must be dependent upon whether the negligence law practice, in and of itself, is marital property so that it can be the subject of such a distributive award.
Section 236 (part B, subd 1, par c) of the Domestic Relations Law defines marital property as follows: “The term ‘marital property’ shall mean all property acquired by either or both spouses during the marriage”.
Section 236 (part B, subd 1, par b) of the Domestic Relations Law describes distributive award as follows: “The term ‘distributive award’ shall mean payments provided for in a valid agreement between the parties or awarded by the court, in lieu of or to supplement, facilitate or effectuate the division or distribution of property where authorized in a matrimonial action, and payable either in a lump sum or over a period of time in fixed amounts.”
The prime question involves whether a negligence law practice is marital property so as to be subject to equitable distribution and a distributive award based thereon.
*233 This court is cognizant of the decisions in concurrent jurisdiction which hold that a law practice is an asset subject to equitable distribution. (Levy v Levy, 164 NJ Super 542.) This court is also familiar with the several cases in New York State which seem to suggest that a law practice may be a marital asset subject to equitable distribution. (Barton v Barton, NYLJ, May 20, 1982, p 10, col 7; Hirschfeld v Hirschfeld, NYLJ, May 4, 1982, p 7, col 1; Wall v Wall, NYLJ, March 18,1982, p 15, col 3.) The court is nevertheless troubled by apparent inconsistencies between the concept that a law practice is not a commodity subject to sale, while at the same time holding that it may be a marital asset subject to distribution. The Code of Professional Responsibility (EC 4-6) makes clear the impropriety of selling a law practice, as follows: “Thus a lawyer should not attempt to sell a law practice as a going business because, among other reasons, to do so would involve the disclosure of confidences and secrets.”
The leading work on legal ethics by Drinker (Legal Ethics, p 161) leaves no doubt about the fact that “A lawyer’s practice and good will may not be offered for sale”. In the same work on legal ethics (id., p 189), there is a clear and unequivocal statement that “A lawyer’s clients are not merchandise nor is a law practice the subject of barter”. Opinions from the New York State Bar Association Committee on Professional Ethics (Opn No. 366, Oct. 25,1974) confirm that: “ ‘Clients are not merchandise. Lawyers are not tradesmen. They have nothing to sell but personal service. An attempt, therefore, to barter in clients would appear to be inconsistent with the best concepts of our professional status.’ ” Indeed, the four Appellate Divisions of our State have adopted the Code of Professional Responsibility of the New York State Bar Association, and: “Any attorney who fails to conduct himself, either professionally or personally, in conformity with the standards of conduct imposed upon members of the bar as conditions for the privilege to practice law, and any attorney who violates any provision of the rules of this court governing the conduct of attorneys, or any disciplinary rule of the Code of Professional Responsibility, as adopted by the New York State Bar Association * * * shall be deemed to be guilty of *234 professional misconduct”. (Rules of the Appellate Division, Second Department, 22 NYCRR 691.2.) It is obvious that if a lawyer treats his practice as a commodity and sells it, he is in violation of the Code of Professional Responsibility and is subject to disciplinary action by the Appellate Division.
In my view, the court cannot on the one hand eliminate a law practice as an asset subject to sale, and at the same time consider it as a valuable, saleable asset subject to equitable distribution.
There are other reasons which cause this court concern with respect to considering the good will of a law practice as an asset subject to equitable distribution. The unbilled fees in the file, the contingent fees in the file, and the potential fees to be derived from clients, are all a part of the lawyer’s means of earning a livelihood. Maintenance may be provided to a spouse for a limited period of time as seems just and proper to the Trial Judge. The amount of that maintenance will be based upon income, and the Trial Judge will obviously consider the income of the spouse lawyer over a period of time in order to determine the proper maintenance award. The greater the income, the greater the potential maintenance award. An attorney who is constrained from selling his practice due to the Code of Professional Responsibility would be faced with providing maintenance based upon income, and at the same time be charged with a distributive award based upon the same potential income which forms the basis of the maintenance award.
Although Justice Shainswit in Barton (supra, p 11, col 5) found that there was “a tangible economic value” on which she gave the wife a distributive award based upon a percentage of the husband’s yearly gross income, she also found that a negligence practice has an “inherent unpredictability”, and that such practice had no good will. This court fully agrees that the income of this plaintiff’s negligence practice is unpredictable and that his negligence practice has no good will. I would, however, respectfully disagree that there should be a distributive award based upon the tangible value of the practice using a percentage of yearly income to arrive at the distributive award.
*235 In Hirschfeld (supra), Justice Gomez held that while the good will of a law practice may not be sold or transferred, he did place a value on it, citing Levy for purposes of equitable distribution. Justice Gomez found that the husband, a sole practitioner, had net earnings before taxes of $33,800, and he further found that were the defendant husband to be employed as a corporate attorney, he would be earning approximately $20,000 per year. The $13,800 difference Justice Gomez held to be a marital asset subject to equitable distribution, and that the wife should receive one half of this $13,800 each year for a six-year .period. Just as I could not agree with Justice Shainswit in placing a tangible value on a law practice, I cannot agree with Justice Gomez in finding that this “excess income” is a marital asset subject to distribution.
With respect to Wall (supra) although Justice Vitale indicated that the court is permitted to consider a spouse’s interest in a business entity and make a distributive award based on it, that case, where the defendant husband was a sole practitioner, dealt merely with awarding the plaintiff pendente lite fees to employ an accountant in connection with the discovery of the defendant’s business records and finances. Nothing in the decision indicates that Justice Vitale felt that an equitable distribution of the good will of a law practice was in order.
I have previously referred to Levy (supra). The court in Levy, citing Stern v Stern (66 NJ 340), affirms that. State’s position with respect to the “ethical non-saleability of a law practice”. The Stern case nevertheless comes to the conclusion that the good will of a law firm, although it may not be transferred for a valuable consideration for ethical reasons, does have a real element of economic worth insofar as a matrimonial proceeding is concerned and the equitable distribution of such marital assets. This court cannot understand, nor can it reconcile, the concept that a law practice has a value for one purpose and not another purpose.
On the basis of the foregoing, no award is being made for any valuation of the plaintiff’s law practice. Since lawyers are not tradesmen and have nothing to sell but personal services, there would be no purpose in having one negli *236 gence lawyer evaluate the so-called value of another lawyer’s practice. In addition, a negligence practice by its very nature is speculative and contingent and would not be the proper subject of a valuation which could be relied on by the court in determining the value of the practice. If the court were to attempt to make an equitable distribution of a negligence law practice, an evaluation of each case would be necessary and require a determination as to questions of liability and comparative negligence and a determination as to what amount a jury would award in each case. Moreover, in the view of this court, a distribution of a negligence practice might prove highly prejudicial to the individual client, since there might well be a tendency on the part of a lawyer to consider the amount distributed as an expense of the case. This could conceivably affect his judgment in advising a client on questions of settlement, especially in the event a settlement offer, although fair and reasonable, would fall below the valuation of a case at the trial level. Under such circumstances, he might urge his client to try a case where he otherwise would have recommended a fair and reasonable settlement offer.
This decision, however, is not meant to indicate that the defendant is prohibited from sharing in any fixed assets which the plaintiff’s law firm may have, such as cash on hand, library, fixtures, furniture, leasehold interest, etc.
This award is also being made without prejudice to the defendant’s application to the trial court for additional fees, if warranted. Furthermore, since this award is only being made to assist the defendant in pressing her claims in this action (Gueli v Gueli, 106 Misc 2d 877, supra), it is without prejudice to the plaintiff applying to the trial court for a credit or an adjustment for a part of or all of any sums directed to be paid for said professional services based upon the ultimate disposition of the action.