JOAN P. AHERN, Appellant, v TIMOTHY AHERN, Respondent.

Second Department, June 6, 1983

#### APPEARANCES OF COUNSEL

*Joel R. Brandes, P. C.,* for appellant.

*Speno, Goldberg, Moore, Margules & Corcoran, P. C.* (*Max Margules* and *Peter Sullivan* of counsel), for respondent.

#### OPINION OF THE COURT

MANGANO, J.

On this appeal, we are asked to delineate the permissible scope of *pendente lite* fees to be awarded in matrimonial actions governed by the Equitable Distribution Law (see Domestic Relations Law, § 236, part B).

### I

Plaintiff and defendant were married in 1960 and three children were born of that union. Plaintiff commenced the instant action for divorce in February, 1982 on the grounds of cruel and inhuman treatment and abandonment. As ancillary relief, plaintiff requested, *inter alia,* maintenance for herself, child support and counsel fees.

Defendant interposed a verified answer denying the allegations of the complaint and thereafter served on plaintiff's counsel a "Statement of Net Worth as of April 30, 1982".

By notice of motion dated October 26, 1982 plaintiff moved for an order directing the defendant to pay: (1) counsel fees, *pendente lite,* in the sum of $35,000; (2) fees for an accountant's services, *pendente lite,* in the sum of $15,000; and (3) fees for a real estate appraiser's services, *pendente lite,* in the sum of $10,000.

The affidavits in support of plaintiff's motion indicated, *inter alia,* that: (1) a marked discrepancy exists between defendant's statements of net worth and his 1980 tax return and (2) defendant has extensive financial holdings in commercial paper, securities, various business ventures, and real estate. Affidavits were submitted by plaintiff's counsel, as well as a reputable accountant and real estate appraiser attesting to the need for an in-depth inquiry into defendant's records in order to properly prepare plaintiff's case. Plaintiff also submitted her own affidavit wherein she asserted that other than her interest in the marital residence, she had no assets or income with which to pay counsel and necessary experts.

In opposition to plaintiff's motion, defendant argued, *inter alia,* that the plaintiff's motion was premature and that "the best time to apply for allowances for legal services and related services is after the trial when the court is aware of the necessary number of hours spent, and the results accomplished"

In disposing of plaintiff's motion, Special Term (1) awarded plaintiff a *pendente lite* fee of $1,000 for an accountant's services; (2) awarded plaintiff a *pendente lite* fee of $500 for a real estate appraiser's services; and (3) referred plaintiff's application for counsel fees, *pendente lite,* to the trial court.

## II

Under part B of section 236 of the Domestic Relations Law, commonly known as the Equitable Distribution Law, the courts are mandated to make an equitable disposition of the marital property of the parties in the final judgment.

Specifically, the statute provides as follows (Domestic Relations Law, § 236, part B, subd 1, par c; subd 5, pars a, c, d, cls [1]-[9]):

"c. The term 'marital property' shall mean all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held, except as otherwise provided in agreement pursuant to subdivision three of this part. Marital property shall not include separate property as hereinafter defined * * *

"5. Disposition of property in certain matrimonial actions.

"a. Except where the parties have provided in an agreement for the disposition of their property pursuant to subdivision three of this part, the court, in an action wherein all or part of the relief granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage, and in proceedings to obtain a distribution of marital property following a foreign judgment of divorce, shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment * * *

"c. Marital property shall be distributed equitably between the parties, considering the circumstances of the case and of the respective parties * * *

"d. In determining an equitable disposition of property under paragraph c, the court shall consider:

"(1) the income and property of each party at the time of marriage, and at the time of the commencement of the action;

"(2) the duration of the marriage and the age and health of both parties;

"(3) the need of a custodial parent to occupy or own the marital residence and to use or own its household effects;

"(4) the loss of inheritance and pension rights upon dissolution of the marriage as of the date of dissolution;

"(5) any award of maintenance under subdivision six of this part;

"(6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party;

"(7) the liquid or non-liquid character of all marital property;

"(8) the probable future financial circumstances of each party;

"(9) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party".

The court is further mandated to "set forth the factors it considered and the reasons for its decision" (Domestic Relations Law, § 236, part B, subd 5, par g).

Pursuant to this statutory scheme it is quite clear that the parties "must be prepared to present evidence" (*Roussos v Roussos,* 106 Misc 2d 583, 585) regarding the exact nature and value of the marital property in order to assist the court in reaching its determination. Accordingly, it has been held that both parties in a matrimonial action governed by the Equitable Distribution Law are now entitled to: "a searching exploration of each other's assets and dealings at the time of and during the marriage, so as to delineate the extent of 'marital property', distinguish it from 'separate property', uncover hidden assets of 'marital property', discover possible waste of 'marital property', and in general gain any information which may bear on the issue of equitable distribution, as well as maintenance and child support. The entire financial history of the marriage must be open for inspection by both parties. It is simply no longer true that the current financial status of the parties is all that counts" (*Roussos v Roussos,* 106 Misc 2d 583, 584-585, *supra;* see, also, *Gueli v Gueli,* 106 Misc 2d 877; *Fay v Fay,* 108 Misc 2d 373; *Litman v Litman,* 115 Misc 2d 230).

Moreover, the provisions of the Equitable Distribution Law will inevitably present the courts with a host of complex issues involving the tracing and evaluation of marital property thereby requiring protracted involvement by counsel, as well as various experts, i.e., accountants, appraisers, and actuaries, in many instances (Shainswit, Some Thoughts from the Bench on Equitable Distribution, NYLJ, April 6, 1981, p 1, col 2). As stated by the court in *Litman v Litman* (115 Misc 2d 230, 231, *supra*): "In an appropriate case, where a spouse cannot afford to retain the experts necessary to fully evaluate all the marital property subject to equitable distribution, the court is empowered to direct one spouse to pay to the other spouse funds sufficient to enable that spouse to carry out the necessary disclosure." In *Gueli v Gueli* (106 Misc 2d 877, 878, *supra*), the court stated: "Reading section 236 (part B, subd 5) of the Domestic Relations Law with section 237 of the Domestic Relations Law it is clear that the court has authority to award to a needy spouse funds to enable that spouse to carry on or defend the action or proceeding, as justice requires, having regard to the circumstances of the case and the respective parties. Under the circumstances presented in the record before this court an award, *pendente lite,* for funds by which the plaintiff may retain accounting and/or appraisal experts is within the court's authority and is warranted."

Indeed both this court, and Special Term have authorized the granting of *pendente lite* fees for expert services (see *Satz v Satz*, 94 AD2d 740, where this court affirmed a *pendente lite* award of $3,500 for accountant's and appraiser's services; *Gueli v Gueli*, 106 Misc 2d 877, *supra, pendente lite* award of $500 for an accountant's services; *Fay v Fay,* 108 Misc 2d 373, *supra, pendente lite* award of $1,000 for accounting services; *Heber v Heber,* 112 Misc 2d 799, *pendente lite* awards of $350 for an actuary's services and $150 for a real estate appraiser's services; *Litman v Litman,* 115 Misc 2d 230, *supra,* which granted *pendente lite* awards of $1,000 for accountant's services and $1,000 for real estate appraisals and denied an application for funds to retain experts to evaluate a law practice. On appeal to this court solely from the denial of the application for funds

to evaluate a law practice this court reversed the order insofar as appealed from and granted the application in the amount of $2,500 [93 AD2d 695]).*

## III

Although *pendente lite* awards for the services of certain experts is authorized in matrimonial actions governed by the Equitable Distribution Law, these awards should not be granted routinely. Rather, they must be based upon sound judicial discretion after weighing applications which set forth in detail (1) the nature of the marital property involved; (2) the difficulties involved, if any, in identifying and evaluating same; (3) the services to be rendered and an estimate of the time involved; and (4) the movant's financial status.

A review of the instant record leads us to the conclusion that Special Term's *pendente lite* awards are inadequate in light of the complicated nature of defendant's financial holdings, his substantial assets, and plaintiff's inability to pay. Accordingly, the order appealed from should be modified by awarding plaintiff, *pendente lite* (1) $5,000 in counsel fees; (2) $2,500 for an accountant's services; and (3) $1,500 for a real estate appraiser's services, with leave to plaintiff to apply to the trial court for additional fees, if warranted.

LAZER, J. P., THOMPSON and GULOTTA, JJ., concur.

Order of the Supreme Court, Nassau County, dated December 17, 1982, modified by awarding the plaintiff, *pendente lite,* (1) $5,000 in counsel fees; (2) $2,500 for an accountant's services; and (3) $1,500 for a real estate appraiser's services, with leave to plaintiff to apply to the trial court for additional fees, if warranted. As so modified, order affirmed, with costs to the plaintiff.

---

* It should be noted that on May 10, 1983 Governor Cuomo signed legislation which specifically authorizes the granting of *pendente lite* awards in matrimonial actions for various fees and expenses including investigative and appraisal fees. Chapter 86 of the Laws of 1983 amends section 237 of the Domestic Relations Law by authorizing the award, pending litigation, of additional expenses. The amendment, which takes effect 30 days "after it shall have become law", provides for the award of "accountant fees, appraisal fees, actuarial fees, investigative fees, and other fees and expenses that the court may determine to be necessary to enable a spouse to carry on or defend an action or proceeding" under section 237.