Robert L. RICHMOND, Appellant,

v.

Margaret T. RICHMOND, Appellee.

No. S–2209.

Supreme Court of Alaska.

Sept. 15, 1989.

James D. Gilmore and Jeffrey M. Feldman, Gilmore & Feldman, Anchorage, for appellant.

Robert H. Wagstaff, Wagstaff, Pope & Clocksin, Anchorage, for appellee.

Before MATTHEWS, and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

This appeal is from the property division, alimony, child support, and attorney fees and costs judgment in a domestic proceeding between Robert and Margaret. Robert asserts that the professional goodwill of an attorney is unmarketable and hence the trial court erred by including his professional goodwill in the marital estate. He also contends that the trial court erred by accepting an improper value for his law firm's tangible assets, awarding Margaret $3,000 per month alimony for six years, $1,000 per month per child for child support, and approximately $80,000 in attorney fees and costs.

I. FACTUAL AND PROCEDURAL BACKGROUND

At the time Margaret and Robert were married in 1967, Robert was attending law school on the "G.I. Bill." Both Robert and Margaret worked while Robert was in law school. After Robert graduated, they came to Alaska, and Robert began practicing law. At the time this proceeding was filed, Robert was the sole shareholder of his professional corporation.

Although Margaret did some work at the law firm for Robert and managed the couple's condominiums and personal finances, she was primarily a homemaker, raising the couple's three children.[1]

1. At the time of trial in this case, the three children were 14, 13 and 9 years of age.

Robert and Margaret separated on October 24, 1984. The division of property, alimony, child support and attorney fees and costs were determined at trial in 1986. Child custody was settled by stipulation. The trial court awarded Margaret approximately $1.2 million in marital assets. This was essentially all the marital estate except Robert's law practice, which was awarded to him. The law practice was valued by Margaret's expert at $1.125 million; her expert valued the tangible assets of the law practice at $457,000 and Robert's goodwill at $550,000. These values were accepted by the trial court. Robert's expert valued Robert's law practice at $189,500. His expert valued Robert's goodwill at between $5,000 and $15,000.

The trial court also awarded Margaret $3,000 per month alimony for six years, $3,000 per month child support ($1,000 per month per child), and approximately $80,-000 for attorney fees and costs. Judgment was entered April 30, 1987. Facts pertinent to each issue are addressed in the discussion.

## II. DISCUSSION

### A. PROPERTY DIVISION.

Robert appeals the property division. He argues that his professional goodwill is unmarketable and therefore not part of the marital estate. He also objects to the valuation of his law practice's tangible assets.

Property divisions are reviewed to determine "whether the trial court abused the broad discretion given it under AS 25.24.-160(a)(4)." *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988). The trial court must use a three-step process in dividing property: First, the trial court is to determine what property is available for division; this determination is reviewed under an abuse of discretion standard "although it may involve legal determinations, which this court reviews independently." *Id.* Second, the trial court is to value the property; this is a factual inquiry to be reversed only if clearly erroneous. *Id.* Third, the trial court is to equitably allocate the property;

this determination is reviewed applying an abuse of discretion standard and set aside only if clearly unjust. *Id.* Because Robert raises the legal question whether goodwill is available for distribution, this court will independently review the trial court's decision to include goodwill in the marital estate.

### 1. *Marketability of Robert's Professional Goodwill.*

■ The goodwill of a professional corporation is property which may be includable in the marital estate in a divorce proceeding. *See Rostel v. Rostel*, 622 P.2d 429, 430–31 (Alaska 1981). In *Rostel* we held that income earning capacity attributable solely to the expertise, talents and personality of one spouse is property subject to division by the court. *Id.* No distinction was made between marketable and unmarketable goodwill. *Id.* We narrowed our position on professional goodwill in *Moffitt*, 749 P.2d at 347. There we held that only marketable goodwill was to be included in the marital estate. *Id.* The court chose this approach "because to award the value of an unmarketable asset to an ex-spouse might restrict the liberty of the spouse who possesses that asset." *Id.* at n. 3. In order that an ex-spouse's liberty not be restricted, this court will not divide goodwill that cannot be sold. *Id.*

Robert contends that his law practice has no marketable professional goodwill, and that the trial court erred by including his professional goodwill in the marital estate. We continue to adhere to the view we expressed in *Moffitt* and conclude that Robert is correct.

■ In *Moffitt*, we articulated a two-part test for assessing the divisibility of professional goodwill. *Moffitt*, 749 P.2d at 347. The trial court must first determine if goodwill exists. *Id.* If the trial court determines that goodwill exists, "it then must determine whether the good will could actually be sold to a prospective buyer." *Id.* "If the trial court determines either that no good will exists or that the good will is unmarketable, then no value for good will

should be considered in dividing marital assets."[2] *Id.*

We express no opinion regarding the marketability of a multi-lawyer law firm's professional goodwill.[3] It may be that marketable professional goodwill exists in a multi-lawyer firm, for example, upon evidence of sales or purchases of partnership interests.

■ In this case it is clear that Robert's goodwill is unmarketable. The uncontroverted evidence established that his law practice's goodwill could not be sold.[4]

We conclude that Robert has no marketable professional goodwill in his law practice, and that the trial court erred by including his professional goodwill in the marital estate.

2. *Valuation of the Law Firm's Tangible Assets.*

■ Robert contends that three errors were made in valuing the tangible assets of the law firm. He asserts errors in valuing the accounts receivable, equipment, and work in progress.

Margaret's expert valued Robert's law firm's accounts receivable at their book value of $202,454. He made no provision for bad debts. He reasoned that no bad debt reserve was warranted because Robert's practice was primarily insurance company defense. Thus, he felt 100% of the accounts were collectible.

Robert's expert valued Robert's law firm's accounts receivable at $180,018. He arrived at his figure by using the actual amount collected out of the $202,454 receivable as of October 24, 1984. He determined that $22,436 of the accounts receivable on October 24, 1984, had been written off.

It was clearly erroneous for the trial court to rely on Margaret's figures. The trial court had the actual figures before it and did not have to rely on Margaret's expert's incorrect assumption.

The valuation of the firm's office equipment, accepted by the court, was based on replacement cost, arrived at by reference to Robert's corporate insurance policy. Robert relied on a valuation by William Borchardt, manager of Arctic Office Products, for the equipment's fair market value. Upon questioning from the bench, Mr. Borchardt indicated that his valuation was based on the fair market value at the time of trial in 1986, not the value as of October 24, 1984, the date agreed on for valuation.

Again, it was clear error to accept Margaret's valuation of the equipment. Reliance on the replacement cost of the equipment was not in accordance with acceptable valuation methods. The trial court should have looked to the fair market value of the equipment. *Cf. Hayes v. Hayes,* 756 P.2d 298, 299 (Alaska 1988) (rejecting valuation of business based on insurance funded buy out agreement). However, Mr. Borchardt's valuation was of no evidentiary value. On remand the trial court should ascertain or

---

**2.** Our dissenting colleague disagrees with our view that it is unfair to include unmarketable goodwill in the marital estate. [Dissent at 1219–20] The dissent finds the criticism of *Moffitt* by L. Golden, *Equitable Distribution of Property* § 6.21, Supp. at 107 (1983 & Supp.1988), persuasive. [Dissent at 1219–20] We do not.

As noted by Golden, unmarketable goodwill represents the reputation and future earning capacity of the professional spouse. The portion of unmarketable goodwill that reflects increased earning capacity is accounted for in the property division. *Merrill v. Merrill,* 368 P.2d 546, 547 n. 4 (Alaska 1962). As to the professional spouse's personal reputation in *Nelson v. Nelson,* 736 P.2d 1145 (Alaska 1987), we held that because a professional degree was personal to the holder, it was not subject to division. *Id.*

at 1146. In the context of this case, Robert's professional goodwill is personal to him and stands on the same footing as a professional degree.

**3.** Contrary to the dissent's assertion, the central question here is not whether a multi-lawyer firm has divisible goodwill. Robert was the sole shareholder of his firm. The firm employed associates and is a multi-lawyer firm in that sense. However, it is not a multi-lawyer firm in the sense of having multiple-shareholders or partners.

**4.** At trial Margaret's expert testified that a law practice, including its goodwill, could not be sold. Robert's expert stated that in his opinion Robert's law firm does not have marketable professional goodwill.

estimate the fair market value of the equipment as of October 24, 1984.

Robert also objected to Margaret's valuation of his firm's work in progress. It was valued at $155,584, based on data from the Altman–Weil survey for year ending 1984.[5] Robert used records of his law firm to value work in progress at $60,935. This figure was based on records the firm began keeping in May 1985 and calculations based on work in progress as of February 28, 1985. Robert's expert worked backwards from these figures to determine work in progress on October 24, 1984.

Relying on a national survey when actual figures are available is an abuse of discretion. If the trial court found Robert's figures unreliable, it could have obtained reliable figures to value the work in progress. Based on the foregoing, we have a definite and firm conviction that a mistake was made in valuing Robert's law firm's tangible assets. Therefore, we remand the valuation for redetermination.

### B.  TRIAL COURT'S AWARD OF ALIMONY.

■  Margaret was awarded $3,000 per month alimony. The "rehabilitative alimony" was to be paid for six years "to assist her in the transition from being a participant in an economic partnership to supporting herself." Margaret contends that the court's award of alimony in this amount was justified by the need to equalize her earnings with Robert's. Robert challenges this award. He argues that it is unjust, unnecessary and contrary to decisions of this court.

■  An award of alimony is within the trial court's discretion and will be set aside only if it is unjust or unnecessary. *Messina v. Messina*, 583 P.2d 804 (Alaska 1978). Recently, we reiterated our position that alimony is not "just and necessary" when the property division can adequately provide for the "reasonable needs of the spouse seeking alimony." *Hilliker v. Hilliker*, 755 P.2d 1111, 1112 (Alaska 1988) (and cases cited therein). Rehabilitative alimony may be awarded for a specific purpose and a short duration even with an adequate property division, *Bussell v. Bussell*, 623 P.2d 1221, 1224 (Alaska 1981), but is limited to job training or other means directly related to entry or advancement within the work force. *Schanck v. Schanck*, 717 P.2d 1, 5 (Alaska 1986). The party seeking rehabilitative alimony must intend to use it for such purposes. *Miller v. Miller*, 739 P.2d 163, 165 (Alaska 1987). Absent such an intent, rehabilitative alimony should not be awarded. *Id.*[6]

Applying the foregoing analysis to this case, we conclude that the trial court's award of rehabilitative alimony was an abuse of discretion. Margaret has a college degree and was employed at the time of the trial. She disclaimed any need for or intent to seek retraining. Absent any intention to pursue training, Margaret was not entitled to rehabilitative alimony. *See Miller*, 739 P.2d at 165.

Margaret argues that the award is not unjust and unnecessary because it equalizes her income with Robert's. She reasons that it is fair to award alimony in this case because of the difference between her earning capacity and Robert's. However, differences in earning capacity should be

---

**5.**  The Altman–Weil survey estimates work in progress as of the end of the fiscal year. The trial court's acceptance of this figure is puzzling. The trial court did not rely on Altman–Weil's valuation for accounts receivable. This selective use of data resulted in Robert's practice being overvalued.

**6.**  In addition to rehabilitative alimony, this court has recognized reorientation alimony. *Dixon v. Dixon*, 747 P.2d 1169 (Alaska 1987). The purpose of reorientation alimony is to allow the requesting spouse an opportunity to adjust to the changed financial circumstances accompanying a divorce. *Dixon*, 747 P.2d at 1173. However, reorientation alimony is only appropriate when the property settlement will not adequately meet the parties' reasonable needs. *Dixon*, 747 P.2d at 1172–1174.

The trial court could have meant to award reorientation alimony in this case. However, the award of alimony here cannot stand as reorientation alimony. There is sufficient property available to meet her reasonable needs. *Hilliker v. Hilliker*, 755 P.2d 1111, 1112 (Alaska 1988). Therefore, an award of reorientation alimony would be an abuse of discretion.

taken into account in the property division. *Merrill v. Merrill,* 368 P.2d 546, 547–48 n. 4 (Alaska 1962). As observed in *Dixon v. Dixon,* 747 P.2d 1169, 1173 (Alaska 1987), in some cases it may be appropriate to give a larger share of the marital estate to the spouse with the smaller earning capacity.[7] 747 P.2d at 1173.

## C. TRIAL COURT'S AWARD OF CHILD SUPPORT.

Robert objects to the trial court's award to Margaret of $1,000 per child per month for child support. Additionally, Robert was ordered to pay 100% of the children's medical and dental expenses.[8] In awarding child support, the trial court stated in its Findings of Fact and Conclusions of Law:

7. The children have enjoyed a standard of living commensurate with their father's earnings. Defendant is financially able to pay and should pay the amount of $1,000 per month per child for a total of $3,000 per month as child support for the support and maintenance of the three minor children of the parties. These child support payments should be paid through the Child Support Enforcement Agency in Anchorage, Alaska on the first day of each month beginning May 1, 1987.

8. Defendant is financially able to pay and should pay all medical, surgical, hospital, dental and orthodontic expenses of the minor children.

Margaret testified that without any "fluff" each child's expenses were $833 per month. This figure only covered expenses; it did not allow for trips or vacations. Margaret arrived at this figure by taking monthly expenses for herself and the three children and dividing by four and multiplying by three. Margaret asked that child support be set at $1,000 per child per month to allow her to provide the children with "extracurricular enjoyment." She presented no evidence to support an amount above $833 per child per month.

Robert testified that the expenses were $515 per child. His figures were arrived at by examining the monthly expenditures and attempting to filter out what were actually Margaret's expenses. He argues that he is shouldering the total out-of-pocket expenses of the children, and thus the award is contrary to the decisions of this court.

■ Child support awards are within the broad discretion of the trial court. *Pattee v. Pattee,* 744 P.2d 658, 662 (Alaska 1987). They are not to be set aside unless the trial court has abused its discretion, *i.e.,* unless based on the record as a whole this court is left with a "definite and firm conviction that a mistake has been made." *Hunt v. Hunt,* 698 P.2d 1168, 1172 (Alaska 1985).

■ Awards of child support are to be based on the total cost of supporting the children and the relative financial abilities of both parents. *Pattee,* 744 P.2d at 662; *Hunt,* 698 P.2d at 1172. The first step is to assess the reasonable needs of the children, including their station in life. *Cf. Hunt,* 698 P.2d at 1173. Second, the trial court is to assess the relative financial ability of the parents to meet the children's needs. *Id.* Third, the court determines whether the relative financial abilities justify placing a greater burden on one parent and a lesser burden on the other. *Id.* at 1172.

■ Applying the foregoing analysis to this case, a review of the record as a whole leads us to a definite and firm conviction that a mistake has been made. Robert was ordered to pay 100% of the child's out-of-pocket expenses based solely on his financial ability to pay. No mention was made of Margaret's ability to share in

(citing *Monsma v. Monsma,* 618 P.2d 559, 560 (Alaska 1980); *Allen v. Allen,* 554 P.2d 393, 395–96 (Alaska 1976)).

7. This is not to say that Margaret must be provided with property which will produce an amount of income sufficient to support a standard of living comparable to that which was enjoyed during the marriage. Both parties to a divorce must reorganize financially. *Hilliker v. Hilliker,* 755 P.2d 1111, 1113 n. 2 (Alaska 1988)

8. Robert does not object to paying the full medical and dental expenses of the children.

meeting the children's needs.[9] Child support is to be equitably assessed based on both parents' ability to meet the reasonable needs of the children. *See Hunt*, 698 P.2d at 1172–73. Margaret concedes that she can expect substantial investment income from the property. Although this is not as great as Robert's income, it does not justify placing the entire burden for out-of-pocket expenses on him. He may have to carry a greater burden, but not the total burden.[10] *Hunt*, 698 P.2d at 1172. Additionally, Robert was ordered to pay the full medical and dental expenses of the children.

The trial court failed to properly determine the ability of both parents to provide for the reasonable needs of the children. Thus, the award of child support must be remanded for redetermination.

■■■■ The trial court also failed to properly assess the children's reasonable needs. Instead, it fixed the level of support at $1,000 per child per month without evidence to support a figure greater than $833 per child per month.[11]

On remand we direct the trial court to determine the proper child support level under the guidelines established in Civil Rule 90.3. Although this case arose before the effective date of Civil Rule 90.3, the legislature has made it clear that pre-Civil Rule 90.3 child support awards are subject to redetermination under Civil Rule 90.3. *See* AS 25.24.170(b). By applying the Civil Rule 90.3 guidelines on remand, the trial court will avoid an almost certain motion to modify any award made under pre-Civil Rule 90.3 guidelines.

### D. ATTORNEY FEES.

■■■ Robert was ordered to pay two-thirds of Margaret's actual attorney fees and costs, approximately $80,000.

Margaret contends that Robert waived review of this issue by failing to argue it properly in his brief. We need not address this contention, since "[b]ecause this case must be remanded, the trial court's attorney[] fees determination must be vacated...." *Brooks v. Brooks*, 733 P.2d 1044, 1058 (Alaska 1987). However, Margaret is entitled to receive presently the amount included in the trial court's award to compensate her for increased litigation costs attributable to Robert's conduct.[12] On remand, the trial court shall segregate its award, identifying separately the amount it included to so compensate Margaret. Judgment for that amount may be entered.

### III. CONCLUSION

Because Robert's professional goodwill is not marketable, the trial court's inclusion of his professional goodwill in the marital estate is REVERSED. The trial court's valuation of the tangible assets of Robert's law firm is REVERSED and REMANDED for redetermination.

The trial court abused its discretion in awarding Margaret alimony. There is ade-

---

9. Robert's income before taxes was accepted by the court to be $197,000 per year. Robert claimed his income was approximately $180,000. Margaret earned $22,000 per year working for the Anchorage Olympic Organizing Committee. Margaret can expect substantial pre-tax income from investing property awarded her in this case. There was no discussion in the Findings of Fact and Conclusions of Law regarding the assessment of Margaret's ability to meet a share of the children's expenses.

10. As *Hunt* indicates, the relative financial ability of the parties may justify placing a greater burden on one parent and a lesser burden on the other. 698 P.2d at 1172. This suggests that when feasible some burden should be placed on the parent who is disadvantaged financially.

11. The trial court's award would have required Robert to pay $36,000 per year in child support.

Had this case been decided under Alaska R.Civ.P. 90.3 (effective August 1, 1987), Robert's total child support would have been $19,800 per year. This figure is arrived at by multiplying $60,000 (the rule's presumed upper limit) by .33 (the factor used for three children). Alaska R.Civ.P. 90.3(a)(2)(C), (c)(2). Any additional amount of support would require justification. Alaska R.Civ.P. 90.3(c)(2). Robert would also be entitled to a credit for medical and dental expenses he paid. Alaska R.Civ.P. 90.3(d).

12. The trial court noted in its findings that Robert's "conduct during the course of this case and immediately preceding it has unnecessarily increased these costs." However, the trial court did not identify the amount of or place a value on the costs unnecessarily increased.

quate property to meet her needs. Therefore, the alimony award must be REVERSED.

The trial court abused its discretion by not assessing the ability of both parents to provide for the children's reasonable needs. Additionally, the trial court awarded an amount of child support not substantiated by the evidence. Therefore, the child support award must be REVERSED and REMANDED for redetermination of a proper amount, in accordance with Civil Rule 90.3.

The award of attorney fees and costs must be VACATED.

RABINOWITZ, J., dissents.

RABINOWITZ, Justice, dissenting.

I dissent from the majority's determination of the goodwill issue. In my opinion, the superior court properly determined that Robert's professional corporation may have goodwill and that it should be included in the marital estate.

As the majority points out,[1] this court held in *Rostel v. Rostel*[2] that a professional practice's goodwill is a divisible marital asset.[3] Although some courts have held to the contrary,[4] this view remains the majority view[5] and, in my opinion and that of several commentators,[6] the better view:

Including goodwill within the marital estate is consonant with the policies of equitable distribution. Goodwill represents the probability of future earnings based on circumstances created during the marriage. It reflects the value of a demonstrated capacity to draw business,

*i.e.*, the individual has already built up a following. After divorce the professional practice will continue to benefit from the goodwill generated while the parties were married. Much of the economic value of the practice produced during the marriage may be reflected in its goodwill. It would be inequitable to ignore the contribution of the other spouse to the development of that economic resource.

There is one crucial distinction between a professional practice, on the one hand, and the education, degree, and license which are its necessary predicates. The latter are intellectual accomplishments, personal achievements of the holder. The practice is a commercial enterprise, a business. It provides income upon which the family depends. Equitable distribution assumes marriage is a partnership, with both parties contributing to its economic well-being. If the financial foundation of that partnership, the source of income, is placed beyond the reach of one of the spouses, the theory loses its meaning.

If equitable distribution does not apply to a professional business, is there any reason to apply it to any business? Valuation problems are not confined to the professions (even assuming that *professions* can be defined with precision). If something is property it comes within the statute, whether it is difficult to value or not. It is contrary to the spirit and policy of the statute to say that because the value of the practice, possibly the most

---

1. Maj. op. at 1213.

2. 622 P.2d 429 (Alaska 1981).

3. *Id.* at 430–31.

4. *See, e.g., Powell v. Powell,* 231 Kan. 456, 648 P.2d 218, 222–24 (1982); *Nail v. Nail,* 486 S.W.2d 761, 763–64 (Tex.1972); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343, 354–55 (App.1981).

5. *In re Marriage of Kapusta,* 141 Ill.App.3d 1010, 96 Ill.Dec. 234, 237, 491 N.E.2d 48, 51 (1986) (citing Annotation, *Accountability for Good Will of Professional Practice in Actions Arising from Divorce or Separation,* 52 A.L.R.3d 1344 (1973));

*Prahinski v. Prahinski,* 75 Md.App. 113, 540 A.2d 833, 842 (citing authorities), *cert. granted,* 313 Md. 572, 546 A.2d 490 (1988).

6. *See, e.g.,* 2 H. Clark, *The Law of Domestic Relations in the United States* § 16.5, at 199 (2d ed.1987); L. Golden, *Equitable Distribution of Property* § 6.21, at 188 (1983 & Supp.1988) (hereinafter "L. Golden"); Note, *Treating Professional Goodwill as Marital Property in Equitable Distribution States,* 58 N.Y.U.L.Rev. 554, 555 (1983) (authored by Carmen Valle Patel); Comment, *Identifying, Valuing, and Dividing Professional Goodwill as Community Property at Dissolution of the Marital Community,* 56 Tul.L.Rev. 313, 313 (1981) (authored by Bryan Mauldin) (hereinafter "Mauldin Comment").

substantial asset of the marriage, cannot be measured with certainty it will be given no value at all. If equitable distribution is to have vitality then such items must be included within its scope.[7]

To the extent that *Moffitt v. Moffitt* [8] did implicitly alter our position on professional goodwill as expressed in *Rostel,* I think that any alteration was a mistake, and that the better view is that professional goodwill need not be marketable to be considered in dividing the marital assets.

In this regard, I find persuasive the criticisms leveled by commentators against *Moffitt* and other similar cases:

Several recent cases have adopted a limited form of divisibility, holding that goodwill is divisible only if it exists apart from the owner's individual reputation and future earning capacity. *Moffitt v. Moffitt,* 749 P.2d 343 (Alaska 1988); *Wilson v. Wilson* [, 294 Ark. 194], 741 S.W.2d 640 (Ark.1987); [*Prahinski v. Prahinski,* 75 Md.App. 113, 540 A.2d 833, 843, *cert. granted,* 313 Md. 572, 546 A.2d 490 (1988)]; *Taylor v. Taylor* [222 Neb. 721], 386 N.W.2d 851 (Neb.1986); *see Buckl v. Buckl* [373 Pa.Super. 521], 542 A.2d 65 (Pa.Super.1988). These cases display a curious inconsistency. Assume that an educated wife uses her own time and effort doing free public relations work for the husband's business, causing its reputation to increase significantly. If the business is a close corporation practicing under a trade name, then the wife's efforts have increased the corporation's goodwill, and she will be compensated for her efforts. *See, e.g., In re Brooks,* 742 S.W.2d 585 (Mo.App.1987); *Buckl.* But if the wife makes exactly the same contributions to the husband's solo professional practice, the goodwill will not be property and the wife will not be compensated. The court will solemnly assure her that unlike the wife in the first situation, her efforts went only to increase her husband's personal reputation and future earning capacity, neither of which constitutes marital property. Thus, whether or not the wife receives compensation for her valuable efforts depends upon the type of business the husband conducts and the form in which he conducts it.

It is difficult to explain this difference of result on any defensible grounds. Some courts have noted that business goodwill is immediately realizable, while professional goodwill is not, *see Buckl,* but even these courts have generally held in other contexts that an asset need not be immediately realizable in order to constitute marital property. For instance, retirement benefits generally cannot be transferred before maturity, but courts in most states have nevertheless found them to be marital property.[9]

Other courts have noted that an award of unrealizable goodwill can be unfair to the owning spouse, because it may force him to pay the nonowning spouse her share by means of a promissory note, thus forcing him to remain employed in order to make the payments. *E.g., Moffitt.* The alternative, however, is to deny the nonowning spouse any rights in an asset of great economic worth which as a matter of economic fact will substantially benefit the owning spouse in the future. Possible difficulties in arranging means of payment should not justify depriving either spouse of their legitimate marital property rights.[10]

---

7. L. Golden § 6.21, at 189.

8. *Moffitt v. Moffitt,* 749 P.2d 343 (Alaska 1988).

9. Alaska is among these states. *See Laing v. Laing,* 741 P.2d 649, 655–56 (Alaska 1987) (nonvested pensions are marital assets subject to division by divorce court); *Monsma v. Monsma,* 618 P.2d 559, 560–61 (Alaska 1980) (vested federal civil service retirement benefits are a divisible marital asset).

10. L. Golden § 6.21, supp. at 107 (citation forms altered; *Prahinski* citation inserted). *See also*

Comment, *Hanson v. Hanson, Mitchell v. Mitchell: The Division of Professional Goodwill upon Marital Dissolution,* 11 Harv. Women's L.J. 147 (1988) (authored by Jane A. Materazzo).

The problem perceived because of the intangible and potentially nonliquid character of professional goodwill is magnified as courts are faced with astonishingly high valuations. Where the value of the non-professional spouse's interest in the professional goodwill exceeds the combined value of the professional spouse's share of all tangible community

In the instant case, there was extensive evidence presented as to Margaret's direct and indirect contributions to the success of Robert's law practice. Margaret's brief presents an accurate characterization of these efforts:

When Robert Richmond opened his own law practice, Margaret Richmond was there to assist him. She worked as a secretary in the law office. When law clerks and associates were hired, she housed and fed them, and washed their clothes. She frequently entertained employees and clients of the law firm, giving annual New Year's Eve parties and "surprise" birthday parties for Robert Richmond. She handled the remodeling of the law office building. She volunteered for community service activities [in part as an effort] to promote the public image of the law firm....

In addition to her efforts on behalf of the law firm, Margaret Richmond managed the family home and the family finances. She agreed to stay at home and care for their three children so that Robert Richmond could continue with developing the law practice and legal career. The specific agreement between the parties was that Robert Richmond's only responsibility was to bring home money from the law practice and that Margaret Richmond would "do everything else." Accordingly, Margaret Richmond acquired money from her parents to [assist in the purchase of the family home]. She acted as business manager for the Richmonds' real estate, managing an apartment building, purchasing [and setting up for rental] a condominium in Hawaii, and remodeling the family home. Margaret Richmond's job was full time as an equal participant in the Margaret and Robert Richmond partnership.

(Citations to trial transcript omitted.)

I agree with Margaret that her contribution to the goodwill of Robert's law practice should be recognized in the marital property division:

After divorce, the law practice will continue to benefit from that goodwill as it had during the marriage. Much of the economic value produced during an attorney's marriage will inhere in the goodwill of the law practice. It would be inequitable to ignore the contribution of the

---

assets, the courts are faced with an additional problem: How is the professional spouse going to obtain the cash necessary to make the ordered compensatory payment? It has been noted that "[i]n very few cases will the goodwill be a liquid asset similar to the items used to offset its value in a division of community property such as stock, real property or bank accounts." At dissolution, all the assets of the practice, including the goodwill, must necessarily be awarded to the licensed professional spouse. The non-professional spouse's interest in the goodwill must be compensated with other property. Not only is the professional spouse faced with the forced liquidation of tangibles in order to pay the necessary compensation, but there may not be enough tangibles to liquidate.

*However, this is also the precise situation in which the non-professional spouse needs the greatest protection. If his share in the professional goodwill is left uncompensated and there is also little tangible property to be awarded, the non-professional spouse will be left with few assets while the professional spouse enjoys continued possession of a very valuable asset. This would amount to a perpetuation of the economic superiority of the professional or working spouse over the non-professional or non-working spouse which*

*community property is intended to remedy.* Clearly the role of the court is not to force the professional spouse into bankruptcy or forced sale of his practice, nor is this a necessary result. It is equally unnecessary for the court to deny the non-professional spouse a fair division of property by intentionally undervaluing the professional goodwill.

....

The solution is not bankruptcy, forced sale of the practice, undervaluation of professional goodwill, or unequal division of the community. The financial interests of both spouses require a far less onerous remedy which is readily available since it frequently is used and is certainly within the courts' discretionary powers. A court, upon assigning a fair value to the professional goodwill and making an appropriate division of tangibles, need only, where necessary to avoid hardship, order periodic payments or the execution of a promissory note payable in installments over a term sufficient to meet the balance due plus interest accrued on the compensation for the non-professional spouse's interest in the goodwill. Such a method meets the financial needs of both spouses.

Mauldin Comment, 56 Tul.L.Rev. at 328–30 (footnotes omitted; emphasis added).

non-attorney spouse to the development of that economic resource. An individual practitioner's inability to sell a law practice does not eliminate existence of goodwill and its value as an asset to be considered in equitable distribution. Obviously, equitable distribution does not require conveyance or transfer of any particular asset. The other spouse, in this case the wife, is entitled to have that asset considered as any other property acquired during the marriage partnership.[11]

The majority opinion states that "it is clear that Robert's goodwill [12] is unmarketable.... [and that] uncontroverted evidence established that his law practice's goodwill could not be sold." [13] If Robert were dissolving or withdrawing from a solo law practice, I could agree that any goodwill in Robert's practice could not be sold.[14] However, this would not lead me to conclude that an ongoing solo law practice lacks goodwill for marital division purposes.[15]

The fact is, however, that Robert is not a sole practitioner, but rather the sole shareholder of an ongoing multi-lawyer professional corporation, Richmond and Associates.[16] Thus, by expressing no opinion as to whether a multi-lawyer law firm has professional goodwill, the majority opinion fails to decide the central issue presented to this court on the issue of goodwill.[17]

In my opinion, both a solo practitioner (operating either as a sole proprietorship or as a professional corporation) and a multi-lawyer law firm (operating either as a partnership or as a professional corporation) may have goodwill.[18] If it does, it should be considered in valuing the marital estate for the reasons that I have expressed above. Although the courts are deeply divided on the question of whether the goodwill of a sole legal practitioner's practice is a divisible marital asset,[19] the majority of courts that have considered the question of whether the goodwill of a multi-lawyer law firm is a divisible asset have answered that question in the affirmative.[20]

---

**11.** *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1, 6 (1983). *Accord In re Marriage of Fenton,* 134 Cal.App.3d 451, 184 Cal.Rptr. 597, 600–02 (1982).

**12.** I cannot agree with the majority's use of the words "Robert's goodwill." The issue here is not the goodwill possessed by Robert, but rather the goodwill (if any) possessed by Robert's law practice.

**13.** Maj. op. at 1214.

**14.** *See Geffen v. Moss,* 53 Cal.App.3d 215, 125 Cal.Rptr. 687 (1975) (sale of goodwill of sole legal practitioner's practice unenforceable as against public policy).

In *Litman v. Litman,* 93 A.D.2d 695, 463 N.Y. S.2d 24 (1983), *aff'g* 115 Misc.2d 230, 453 N.Y. S.2d 1003 (1982), *aff'd,* 61 N.Y.2d 918, 474 N.Y. S.2d 718, 463 N.E.2d 34 (1984), the appellate court reversed the trial court's decision that "since a lawyer is enjoined by the Code of Professional Responsibility ... from selling his or her practice, it is unfair to subject the practice to equitable distribution upon dissolution of the lawyer's marriage." 463 N.Y.S.2d at 25 (citation omitted). The court held that, though the firm need not be sold, the husband would have to compensate the wife for her share of the equity in the firm. *Id.*

**15.** The courts are divided on the question of whether a law practice operated as a sole proprietorship may have goodwill divisible for marital estate purposes. *Compare Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1, 6 (1983); *In re Marriage of Freedman,* 35 Wash.App. 49, 665 P.2d 902, 904–05 (1983) (both holding that goodwill may exist and be divided upon divorce) *with Prahinski v. Prahinski,* 75 Md.App. 113, 540 A.2d 833, 843–44, *cert. granted,* 313 Md. 572, 546 A.2d 490 (1988); *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545, 552 (1986) (both holding that there is no divisible goodwill).

**16.** *See also In re Marriage of Lopez,* 38 Cal. App.3d 93, 113 Cal.Rptr. 58, 63 (1974) (solo attorney formed partnership with two associates by selling interests in firm which included goodwill), *disapproved on other grounds, In re Marriage of Morrison,* 20 Cal.3d 437, 143 Cal.Rptr. 139, 573 P.2d 41 (1978). In the instant case one of the associates in Robert's firm became a partner, and the firm is now Richmond & Quinn.

**17.** Thus, I cannot agree with the majority that "[t]he uncontroverted evidence established that his law practice's goodwill could not be sold." Maj. op. at 1214.

**18.** The existence and value of goodwill must be determined regardless of whether it is "that of a sole practitioner, a professional partnership or a professional corporation." *In re Marriage of Lopez,* 113 Cal.Rptr. at 68.

**19.** *See supra* note 15.

**20.** *See Molloy v. Molloy,* 158 Ariz. 64, 761 P.2d 138, 139–41 (App.1988) (goodwill of incorporat-

ed law firm is a marital asset subject to distribution); *Todd v. Todd,* 272 Cal.App.2d 786, 78 Cal.Rptr. 131, 135–36 (1969) (goodwill of partnership divisible); *In re Marriage of Brooks,* 51 Wash.App. 882, 756 P.2d 161, 162–63 (1988) (goodwill of incorporated law firm may be valued even though assigned no value in the corporate bylaws). *But see Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343, 354–55 (App.1981) (goodwill or intangible value of partnership interest in law firm not an asset subject to division).